**Shilia Ray SMITH and Nathan Yarboro Miller and Ramona Ann Miller, By Next Friend Shilia Ray Smith, for Themselves and All Others Similarly Situated, Petitioners,**

**v.**

**Sammie Lynn PUETT, Commissioner of the Tennessee Department of Human Services, and Patricia Roberts Harris, Secretary of the United States Department of Health, Education and Welfare, Respondents.**

Civ. A. No. 79–3345.

United States District Court,
M. D. Tennessee,
Nashville Division.

Aug. 11, 1980.

William J. Rold, and John Cleveland and James R. LaFevor, Knoxville, Tenn., U. T. Legal Clinic Community Office, for Shilia Ray Smith and Nathan Yarboro Miller and Ramona Ann Miller, by next friend Shilia Ray Smith, for themselves and all others similarly situated.

Aubrey L. Blankenship, Gen. Counsel, Dept. of Human Services, William B. Hubbard, Chief Deputy Atty. Gen., State of Tennessee, Nashville, Tenn., for Sammie Lynn Puett, Commissioner of the Tennessee Dept. of Human Services.

Robert J. Washko, Asst. U. S. Atty., Nashville, Tenn., Gwenn Jones, Dept. of Health and Human Services, Washington, D. C., for Patricia Roberts Harris, Secretary of the U. S. Dept. of Health, Education and Welfare.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This is yet another case in the continuing line of cases[1] that deal with conflicting interpretations of the statutory scheme providing for Aid to Families with Dependent Children [hereinafter "AFDC"] 42 U.S.C.A. § 601 et seq. (1974, Supp.1980). The AFDC Program, established by the Social Security Act of 1935 and now codified as amended in 42 U.S.C.A. § 601 et seq., was designed by Congress to provide financial assistance to needy children lacking parental support. HOUSE COMM. ON WAYS AND MEANS, H.R.Rep.No.615, 74th Cong. 1st Sess. 10 (1935). Based on a scheme of "cooperative federalism", AFDC provides federal matching funds to those states electing to participate only as long as the State assistance plans comply with certain mandatory requirements contained in the Act and comply with regulations promulgated pursuant to the Act by the Department of Health Education and Welfare [hereinafter "HEW"] 42 U.S.C.A. §§ 602, 603 and 604. The State of Tennessee is a participant in the AFDC program pursuant to 3A TENN.CODE ANN. §§ 14–8–101 et seq., (1980) which vests the responsibility of administering the program in the Department of Human Services [hereinafter "DHS"]. 3A TENN. CODE ANN. § 14–8–102(1). DHS administers the AFDC program pursuant to regulations contained in the Tennessee Public Assistance Manual [hereinafter "PAM"].

Plaintiffs are presently before this Court on a motion for summary judgment pursuant to 42 U.S.C.A. § 1983 (Supp.1980) seeking declaratory and injunctive relief against both federal and state defendants alleging that certain regulations in PAM embodying policies mandated by HEW are inconsistent with subchapter IV of the Social Security Act and are unconstitutional under the Due Process Clause of the Fifth Amendment, under the Equal Protection Clause of the Fourteenth Amendment, and under the Supremacy Clause. Specifically at issue is the validity of PAM §§ 2150 and 2151 which state that neither a putative father of an illegitimate child nor his relatives qualify as relatives eligible to receive AFDC on behalf of an illegitimate child, unless the child has been legitimated. Legitimation is not a precondition of eligibility for illegitimate children residing with their mother or a relative in the maternal line. If these contested regulations add an eligibility requirement not specifically authorized by the Social Security Act for the awarding of AFDC benefits to an otherwise eligible dependent child, then these regulations are inconsistent with the Act and must be found to be invalid. *Miller v. Youakim*, 440 U.S. 125, 133–134, 99 S.Ct. 957, 963–64, 59 L.Ed.2d

---

1. *Miller v. Youakim*, 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979); *Quern v. Mandley*, 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978); *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Burns v. Alcala*, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

194 (1979); *Quern v. Mandley*, 436 U.S. 725, 740, 98 S.Ct. 2068, 2077, 56 L.Ed.2d 658 (1978); *Van Lare v. Hurley*, 421 U.S. 338, 339, 95 S.Ct. 1741, 1743, 44 L.Ed.2d 208 (1975); *Burns v. Alcala*, 420 U.S. 575, 578, 95 S.Ct. 1180, 1183, 43 L.Ed.2d 469 (1975); *Carleson v. Remillard*, 406 U.S. 598, 600, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 (1972); *Townsend v. Swank*, 404 U.S. 282, 285, 92 S.Ct. 502, 504, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Defendant HEW is also before this Court on a motion for summary judgment and asserts that the regulations and policies are consistent with the Social Security Act and are not in violation of plaintiffs' constitutional rights. Defendant DHS confesses judgment on the declaratory relief requested stating that HEW's interpretation of the pertinant AFDC statutes are in error; however, DHS requests summary judgment on all other issues including the constitutional issues.

█ Jurisdiction over this cause is based on 28 U.S.C.A. § 1442(a)(1) (1973), the "federal officer" removal statute. This statute has long been held to be a jurisdictional grant in itself in contradistinction to 28 U.S.C.A. § 1441(a) (1973), the general removal statute which requires the presence of an additional jurisdictional grant such as a federal question or diversity jurisdiction[2]. *Perez v. Rhiddlehoover*, 247 F.Supp. 65, 71 (E.D.La.1975), *Horne v. Alderhold*, 1 F.Supp. 690, 691 (N.D.Ga.1932).

█ Plaintiffs' motion for summary judgment is granted. PAM §§ 2150 and 2151 which implement 3A TENN.CODE ANN. §§ 14-8-101 *et seq.*, pursuant to policies mandated by HEW are incompatible with § 606(a) of the Social Security Act to the extent that PAM §§ 2150 and 2151

automatically deny AFDC benefits to an otherwise eligible illegitimate child who resides with a paternal relative.

## I.

Plaintiffs Nathan Yarboro Miller and Ramona Ann Miller, illegitimate children of Avery Eugene Smith and Lisa Miller, resided with the plaintiff Shilia Ray Smith, sister of Avery Smith, from July, 1978 until March, 1979. It has been stipulated that Avery Smith is the natural father of the children although never adjudicated such and that Shilia Smith is the paternal aunt of these children. While in the home of their paternal aunt, these children received no financial support from either of their absent parents. Nor I might add, from the federal or state governments.

Plaintiff applied for AFDC benefits on or about January 26, 1979. On February 19, 1979, the Knox County office of DHS mailed Shilia Smith a notice of denial. This denial letter explained to Ms. Smith that she must be a "legal relative" of the children in order to be eligible for assistance in the State of Tennessee under DHS regulations. These regulations as stated in PAM §§ 2150 and 2151 specifically exclude a putative or natural father and his relatives from the list of relatives eligible to receive AFDC for themselves and a dependent child until legitimation occurs.

An administrative fair hearing was requested by plaintiffs to review this determination. At the hearing it was established that the plaintiff was in fact denied AFDC because the children for whom the assistance was requested were not living with a relative within the specified degree of relationship as required by PAM §§ 2150 and 2151. It was further revealed at this hearing that the State of Tennessee had previ-

---

**2.** Since 28 U.S.C.A. § 1442(a)(1) affords an independent jurisdictional base, the problem of basing jurisdiction on 28 U.S.C.A. §§ 1343(3) and 1343(4) pursuant to a 42 U.S.C.A. § 1983 claim alleging conflict between State laws and regulations and the Social Security Act under the Supremacy Clause does not arise. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

However, if jurisdiction was based on either §§ 1343(3) or 1343(4), this Court would have pendent jurisdiction to entertain a claim that state action violates the Social Security Act since the plaintiffs' Fifth and Fourteenth Amendment claims are not patently without merit, plainly frivolous or clearly foreclosed by prior decisions. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

ously proposed a plan which would have allowed the putative father's relatives to qualify as a specified relative in order to meet the "living with" requirement and thus be eligible as a caretaker relative to receive an AFDC grant for himself and the child. Under the proposed plan, DHS would have made the determination of whether a "blood" relationship was factually established on the basis of various supporting data, just as when application is made by a maternal relative. HEW's Acting Regional Commissioner informed the Commissioner of DHS by letter dated March 11, 1977, that a welfare worker's factual determination on paternity was not adequate for AFDC purposes and approval of the plan was denied. Had Tennessee made the new plan operational over the objections of HEW, federal matching funds could have been discontinued. 42 U.S.C.A. § 604. Finally, it was found that the affidavits of Ms. Smith and her mother swearing that Avery Eugene Smith was the natural father of the children would have been sufficient evidence to establish a relationship between Ms. Smith and the children if the relationship had been through the maternal line instead of the paternal line. AFDC benefits would have been perfunctorily awarded, these children being otherwise eligible under the statutes.

Subsequent to the hearing, a hearing report was released to the plaintiff which stated that PAM §§ 2150 and 2151 mandated the denial of her application.

Plaintiff took exception with the Fair Hearing Report and on April 11, 1979, submitted a Supplemental Appeal Summary. The action of the hearing officer was affirmed by the Commissioner of DHS.

A timely petition for review was filed in Chancery Court for Davidson County, Tennessee. As HEW was also named as a defendant, the Secretary of HEW acted on the privilege granted to it under 28 U.S.C.A. § 1442(a)(1) and removed the action to this Court.

## II.

While plaintiffs have consistently relied on both statutory and constitutional claims, a court presented with both such grounds to support the relief requested should pass on the statutory claim before considering the constitutional question. *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on the questions of constitutionality... unless such adjudication is unavoidable." *Spector Motor Service, Inc., v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944); *United States v. Clark*, 445 U.S. 23, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980); *Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 2552, 61 L.Ed.2d 176 (1979). In line with this policy of strict necessity in disposing of constitutional issues, it is incumbent upon this Court to consider whether the statutory grounds might be dispositive. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 582, n. 22, 99 S.Ct. 1355, 1364, n.22, 59 L.Ed.2d 587 (1979). Therefore, the first question for decision is whether an eligibility requirement not contained in 42 U.S.C.A. § 606(a) has been imposed by DHS and HEW in the form of PAM §§ 2150 and 2151.

Logic and precedent dictate that "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975); *Sante Fe Industries, Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2484, 61 L.Ed.2d 82 (1979); *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). Not only must the plain language of the statute be examined, it must be examined in light of the purposes Congress sought to serve. In so doing, all available and relevant matters should be considered in discerning the intent of Congress. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *En-*

*vironmental Defense Fund v. Tennessee Valley Authority*, 468 F.2d 1164, 1176 (6th Cir. 1972); *Jackson v. Tennessee Valley Authority*, 462 F.Supp. 45, 51 (M.D.Tenn.1978), *aff'd* 595 F.2d 1120 (6th Cir. 1979).

First, the AFDC statutory scheme must be construed in light of its overall purpose as stated in 42 U.S.C.A. § 601:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain independence consistent with the maintenance and continuing parental care and protection, . . .

More precisely, the paramount goal of AFDC is to "provide programs for the economic security and protection of *all* children". *King v. Smith, supra* at 330, 88 S.Ct. at 2140; *Smith v. Huecker*, 531 F.2d 1355, 1356 (6th Cir. 1976).

■ The AFDC statutory framework has been the subject of a great amount of judicial interpretation in the past twelve years. As a result this area of the law is indeed clear. Each State is completely free to set its own monetary standard of need and level of benefits. *Quern v. Mandley, supra* at 725, 98 S.Ct. at 2069; *Dandridge v. Williams*, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970). But participating states are *not* free to narrow the eligibility standards in the Social Security Act that define the categories of people eligible for aid. Beginning with *King v. Smith, supra*, the Supreme Court has consistently held that States receiving federal AFDC matching funds must make assistance under the AFDC Program available to all persons who meet the criteria of 42 U.S.C.A. § 606(a) which defines "dependent child". *Miller v. Youakim, supra* at 134–135, 99 S.Ct. at 964–65; *Burns v. Alcala, supra* at 580, 95 S.Ct. at 1184; *Carleson v. Remillard, supra* 598,

92 S.Ct. at 1933; *Townsend v. Swank, supra* at 286, 92 S.Ct. at 505; *King v. Smith, supra* at 317, 88 S.Ct. at 2133. This conclusion is firmly based on the statutory requirement that a State's "plan for aid and services to needy families with children" must provide that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals". 42 U.S.C.A. § 602(a)(10).

While these statutes mandate that assistance be provided to all persons deemed eligible, they do not completely resolve the question of who is in fact eligible. As stated above § 606(a) provides the statutory definition of dependent child which the Supreme Court has held to be mandatory upon the States. A dependent child is an age-qualified,

> . . . [N]eedy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home . . . 42 U.S.C.A. § 606(a).

With respect to interpreting § 606(a), federal regulations state:

> The determination whether a child has been deprived of parental support or care is made in relation to the child's natural parent or, as appropriate, the adoptive parent or stepparent . . .

45 C.F.R. § 233.90(c)(1) (1979).

Additionally,

> A child may be considered to meet the requirements of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups:
> (1) *Any blood relative*, including those of half-blood, and including first cousins, nephews, or nieces, and persons of preceding generations as denoted by prefixes of grand, great, or great-great. [Emphasis added]. 45 C.F.R. § 233.90(c)(1)(v)(a) (1979).

Throughout the federal statute and regulations, there appears no eligibility distinction between maternal and paternal relatives. Rather, generic terms are used in describing the relative with whom the child must reside in order to be eligible for benefits. The prefix "maternal" does not qualify any of the above terms.

Tennessee statutes and regulations are in accord:

(3) "Dependent child" means a needy child under the age of eighteen (18), except as otherwise herein provided, who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and whose legally responsible relatives are not able to provide adequate care and support of such child without public assistance, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home...

(4) "Caretaker relative" means the father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, with whom the dependent child is living. 3A TENN. CODE ANN. § 14–8–102(3)(4).

DHS Rule 1240–1–2.02(1)(c) states in pertinent part:

A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent or a person in one of the following groups: (1) *Any blood relative, including those of half-blood and including first cousins, nephews, nieces and persons of preceding generations as denoted by prefixes of grand, great or great-great*... [Emphasis added].

Clearly, federal statutes and regulations and Tennessee's pertinent statutes and regulations only require that a relative with whom a dependent child is residing be related by blood to the child. Far from excluding putative fathers or paternal relatives, the statute uses the broadest possible language when it refers to the specified relatives. There is no requirement that the child be legitimated through a legal proceeding designed to prove the existence of the blood relationship. This conclusion is further supported by the definition of a needy and deprived child as encompassing "... the situation of any child who is in need and otherwise eligible, and whose parent—father or mother—... is continually absent from the home...," regardless of "... whether or not the parents were married to each other". 45 C.F.R. § 233.90(c)(i) (1979).

However, defendant HEW's position is that the term "parent" includes only those persons on whom the state imposes a legal duty of support. Under HEW's definition of this term, the natural father of the child must also be the "legal" father of the child in order for himself or his relatives to be considered a specified relative under the Act. HEW has mandated that the State of Tennessee conform to this interpretation. Tennessee meets this requirement through PAM §§ 2150 and 2151.

HEW's basis for this position is somewhat circular in its logic. The agency states, "The provisions in the State law are controlling for purposes of a paternity determination... In lieu of establishing nationwide guidelines on this question, HEW defers to the State Law to resolve such issues... The Supreme Court has supported this position in the case of *King v. Smith*, 323 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)... Therefore, in the instant case, Tennessee's AFDC Manual provisions would be controlling". Appellee's Memorandum in Support of Motion for Summary Judgment, p. 9.

The manual provisions referred to and at issue in this case are first, PAM § 2150 which sets forth the "Relationship Requirements" that must be found to exist between a dependent child and an AFDC caretaker relative to establish eligibility. Section 2150 provides in pertinent part:

§ 2150: *Relationship Requirements*

To be eligible for AFDC, a child must live with a relative (or relatives) within the following degrees of relationship (Interpretation of State Law).

1.  Father, mother, brother, sister, uncle, aunt, first cousin, nephew or niece. This includes relationships to persons of the preceding generations as denoted by prefixes of grand, great, or great-great, and those of half-blood; stepfather, stepmother, stepbrother and stepsister.

\*  \*  \*  \*  \*  \*

*NOTE:*

This putative or alleged father of a child is not considered a relative eligible to receive AFDC for the child. Neither are any relatives of the alleged father eligible for AFDC for the child. However, once paternity has been established through legitimation, bastardy action or marriage of the child's natural parents then the father becomes the legal father of the child and his relatives are legal relatives of the child. They then become eligible relatives to receive AFDC for the child as described above.

In addition, PAM § 2151 lists the evidence required to prove the relationship among parent, child and relatives and provides in part that:

> Copies of marriage and divorce records, legitimation records or statements from Court Clerks concerning marriages and divorces or legitimation will be required to establish relationship when the relationship is through the paternal line. (See Appendix A).

However, when the State of Tennessee submitted a revised plan for approval by HEW which would have allowed a putative father and his relatives to qualify as a relative within the specified degree on the basis of supporting data just as relatives in the maternal line qualify, approval was denied. HEW informed Tennessee that a welfare worker's factual determination on paternity as opposed to maternity was not adequate for AFDC purposes.

This position is contradictory. HEW purports to defer to State law for the purposes of establishing paternity; however, when the State decided to change the law allegedly relied upon by HEW, that agency refused to approve the change stating that it was "not adequate for AFDC purposes".

In *King v. Smith, supra,* a case relied upon heavily by the defendant HEW, the Supreme Court did define the term "parent" as it is used in 42 U.S.C.A. § 606(a) as including only those persons with a "state-imposed legal duty of support". *Id.* at 329, 88 S.Ct. at 2139. Notably, the Court was not addressing the issue of whether a putative father falls within that definition. Rather, the Court held that a substitute parent or a man-in-the-house who is under no legal obligation to provide care or assistance for a child and who is in fact making no such provision was not a "parent" within the definition. His presence could not under state statutes serve to *deny* an otherwise eligible child AFDC benefits on the basis that this parent was not absent from the home. Alabama's "man-in-the-house" statute was an attempt to include someone within the list of specified relatives who was obviously not included in the list. This inclusion resulted in the denial of benefits to otherwise eligible children, a result found by the Supreme Court to be in violation of the federal Social Security Act.

In the present case, HEW not only urges this Court to define the term, "father" as the "legal" father, but also to insert implicitly the term "maternal" before each of the "specified relatives". The result of interpreting the statute thusly is to impose a more restrictive eligibility condition for receiving AFDC than those set out in the statute; a result no different from the requirement found by the Supreme Court in *King* to be in violation of the Act.

Aside from the requirements in PAM §§ 2150 and 2151, the legal duty of a father to his illegitimate child is clearly explicated in 6A TENN.CODE ANN. § 36–223 (1977):

> *"Liability of father of child born out of wedlock. The father of a child born out of wedlock is liable for the necessary support and education of the child. He is also liable for the child's funeral ex-*

penses. He is liable to pay for the expenses of the mother's confinement and recovery, and is also liable to pay such expenses, including counsel fees, in connection with her pregnancy as the Court in its discretion may deem proper." (Emphasis provided)

The above statute has been construed in *Brown v. Thomas*, 221 Tenn. 319, 426 S.W.2d 496 (Tenn.Sup.Ct.1968), a Uniform Reciprocal Enforcement of Support action brought against a father of an illegitimate child. The Tennessee Supreme Court found that it was not necessary for the petitioner to allege that the defendant had been adjudicated to be the father of the child in order to state a cause of action for support payments. In reaching that decision, the Court noted that a father of a child born out of wedlock is liable for the necessary support and education of the child under 6A TENN. CODE ANN. § 36–223 and that "duty of support" as defined by the Uniform Enforcement of Support Act included, "any duty of support imposed or *imposable by law* or any court order, decree or judgment whether interlocutory or final, separate maintenance or otherwise". (Emphasis provided) 6A TENN.CODE ANN. § 36–902(6). Therefore, stated the Court,

"[I]t is clear a father of illegitimate children is obligated for their support... Under the statute, the duty of support need not be the result of court action; but may be any duty imposable by law. Such a duty is imposable upon a putative father by the provisions of T.C.A. § 36–223." *Brown v. Thomas, id.* at 426 S.W.2d 498.

■ Plainly, under Tennessee law a father of illegitimate children is obligated for their support, and this obligation need not be adjudicated prior to seeking support payments for the child. The obligation is ubiquitous and once a support action requires its enforcement in terms of monetary support, the father can be required to provide past, present and future support. 3A TENN. CODE ANN. § 14–8–124(a).

In short, the legal duty always exists and while a paternity adjudication is one vehicle by which to enforce that obligation, it is not the exclusive means of enforcement. The duty is also enforceable through state support statutes without a prior determination of paternity.

As *Brown v. Thomas, supra*, demonstrates, there is an integral relationship between the duty of a putative father to support his children and state support statutes. This relationship also exists between the IV–A section of the Social Security Act, which as previously explained defines the eligibility requirements, and the IV–D Program of the Act.

The IV–D Program was added by the 1975 amendments to the Act. At that time, Congress established a comprehensive mechanism for "Child Support and Establishment of Paternity" as Part D of Title IV of the Act and amended Part A of Title IV to conform.

The intent and purpose of the IV–D Program is stated in 42 U.S.C.A. § 651:

For the purpose of enforcing the support obligations owed by absent parents to their children, locating absent parents, establishing paternity, and obtaining child support, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

State plans for the provision of AFDC must conform to the requirements of 42 U.S.C.A. § 602(a) (Supp.1980):

(a) A state plan for aid and services to needy children must:

(11) provide for prompt notice (including the transmittal of all relevant information) to the state child support collection agency (established pursuant to part D of the title [42 USCA §§ 651 *et seq.*] of the furnishing of aid to families with dependent children with respect to a child who has been deserted or abandoned by a parent (including a child born out of wedlock without regard to whether the paternity of such child has been established).

Each state plan must provide that, as a condition of eligibility, each "applicant or recipient" will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or of any other family member for whom the applicant is applying for or receiving aid...,

(B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed... 42 U.S.C.A. § 602(a)(26).

In addition, each state plan for the provision of AFDC under 42 U.S.C.A. § 602(a) must provide that the state have in effect a IV–D Program plan approved by the Secretary of HEW. 42 U.S.C.A. § 602(a)(27). Each State IV–D Program plan must:

provide that such State will undertake— (A) in the case of a child born out of wedlock with respect to whom an assignment under section 602(a)(26) of this title is effective, to establish the paternity of such child, ... and,

(B) in the case of any child with respect to whom such assignment is effective, to secure support for such child from his parent (or from any other person legally liable for such support)...

42 U.S.C.A. § 654(4).

The IV–D Program requires that in this State, the burden is on DHS to undertake to legally establish paternity once application for AFDC benefits is made. 42 U.S.C.A. § 654(4). *See* also 45 C.F.R. §§ 232.11 (1979); 233.90(a) and (b). The IV–D Program clearly places the burden on DHS to establish paternity and seek support from the absent parent or parents.

This interpretation is fully supported by the legislative history of the IV–D Program. 1974 U.S.Code Cong. & Ad.News, p. 8133.

Senate Report No. 93–1356 states:

The Committee believes that all children have the right to receive support from their fathers. The Committee bill, like the identical provision passed by the Senate (H.R. 3153) last year, is designed to help children attain this right, including the right to have their fathers identified so that support can be obtained... *Id.* at 8146.

According to the Senate Report, the 1975 Amendments establishing the IV–D Program were enacted:

In view of the fact that most States have not implemented in a meaningful way the provisions of present law relating to the enforcement of child support and establishment of paternity, the Committee believes that new and stronger legislative action is required in the area which will create a mechanism to require compliance with the law. *Id.* at 8149–50.

With respect to the policy justifications for requiring state agencies to establish paternity, the Report explains:

The Committee is concerned at the extent to which the dependency on AFDC is a result of the increasing number of children on the rolls who were born out of wedlock and for whom parental support is not being provided because the identity of the father has not been determined. The Committee believes that an AFDC child has a right to have its paternity ascertained in a fair and efficient manner unless identification of the father is clearly against the best interests of the child. Although this may in some cases conflict with what a social worker considers the mothers' short-term interests, the Committee feels that the child's right to support, inheritance, and to know who his father is deserves the higher social priority. In 1967, Congress enacted legislation requiring the States to establish programs to determine the paternity of AFDC children born out of wedlock so that support could be sought. The effectiveness of this provision was greatly curtailed both by the failure of the Department of Health, Education, And Welfare to exercise any leadership role and also by early court interpretations of Federal law which prevented State Welfare Agencies from requiring that a mother cooperate in identifying the father of a child born out of wedlock. Later court decisions, however, have made it clear that such aid could be denied to a non-cooperative mother. *Id.* at 8154–8155.

In taking the position that a child born out of wedlock has a right to have its paternity ascertained in a fair and efficient manner, the Committee acknowledges that legislation must recognize the interest primarily at stake in the paternity action to be that of the child. Since the child cannot act on his own behalf in the short time after his birth when there is hope of finding its father, the Committee feels a mechanism should be provided to ascertain the child's paternity whenever it seems that this would both be possible and in the child's best interest. *Id.* at 8155.

There can be no doubt but that the IV–D Program was enacted as a mechanism by which to ascertain the paternity of illegitimate children in order to obtain support for the child and in order to reimburse the state and federal governments for funds expended on those children through AFDC. In providing a specific vehicle whose purpose is in large part to establish paternity of children receiving AFDC benefits in order to force the absent parents to provide support and reduce the AFDC rolls, it is quite clear that Congress did not intend that paternity be legally established as a precondition for eligibility for AFDC benefits, rather it is assumed that benefits have already been awarded to eligible applicants without regard to the "legal" establishment of paternity. If Congress did intend that paternity be legally established as a precondition for eligibility, it has wasted a large amount of time and energy in promulgating the IV–D Program. This Court declines to accept the proposition that prior adjudication of paternity is a necessary precondition for AFDC eligibility as it is an elementary canon of construction that a statute must be interpreted so as not to render one part inoperative. *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979); *United States v. Menasche,* 348 U.S. 528–539, 75 S.Ct. 513–520, 99 L.Ed. 615 (1955).

### III.

It is well settled that states may not impose more restrictive eligibility require-

ments for receiving AFDC than those set out in the Social Security Act. Had Congress intended to exclude putative fathers of illegitimate children and their paternal relatives from the definition of a "dependent child. . . (1) who has been deprived of parental support or care by reason of . . . continued absence from the home, . . . of a parent . . . who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece. . ." 42 U.S.C.A. § 606(a), it presumably would have done so explicitly. This Court is unpersuaded that the provisions on which defendants rely implicitly limit that expansive definition.

The legislative history and structure of the Act fortify the conclusion that the language of § 606(a) should be given its full scope. Neither the legislative history nor the structure of the Act indicates that Congress intended to differentiate between potential beneficiaries equally in need of the Program based upon whether they were illegitimate children "living with" their father and his relatives as opposed to "living with" their mother or her relatives. Indeed, such a distinction not only inserts an additional eligibility requirement, it would also conflict in several significant respects with the overriding goal of providing the best available care within the family unit for all dependent children. Further demonstration of Congressional intent not to discriminate between illegitimate children who reside with their putative father or paternal relatives and illegitimate children residing with someone in the maternal line of relationship is evidenced by promulgation of the IV–D Program whose purpose is to establish paternity and enforce support obligations on behalf of these children. To find otherwise would render the IV–D Program as codified in 42 U.S.C.A. § 651, *et seq.* and 3A TENN.CODE ANN. § 14–8–122, *et seq.*, partially inoperative and unnecessary.

As the statutory grounds for plaintiffs' claims are dispositive of the issue, it is

unnecessary to reach the plaintiffs' constitutional claims. In addition, since the state regulations and HEW policies at issue have been found to be in violation of the Social Security Act, it is unnecessary to reach plaintiffs' claims that these regulations and policies were improperly promulgated in violation of the Administrative Procedure Act, 5 U.S.C.A. §§ 551 *et seq.*, the Federal Register Act, 44 U.S.C.A. §§ 1501 *et seq.*, and the Tennessee Uniform Administrative Procedures Act, TENN.CODE ANN. §§ 4–5–101, *et seq.*

### IV.

While it is not the purpose of this or any federal court to administer state welfare programs, courts must insure that where federal monies are involved federal law is not violated by the state program or by inconsistent federal policies.

A plan that imposes more restrictive eligibility requirements for receiving AFDC than those set out in the Social Security Act violates the Social Security Act. This Court therefore finds that PAM §§ 2150 and 2151 which implement 3A TENN.CODE ANN. §§ 14–8–101 *et seq.*, pursuant to HEW policies are incompatible with § 606(a) of the Federal Social Security Act to the extent that PAM §§ 2150 and 2151 automatically deny AFDC benefits to an otherwise eligible illegitimate child who resides with his putative father or a paternal relative. Plaintiffs are therefore entitled to a declaratory judgment pursuant to 28 U.S.C.A. § 2201 (Supp.1980) as to PAM §§ 2150 and 2151 and as to any policies applied by HEW in accordance with PAM §§ 2150 and 2151. In addition, plaintiffs are entitled to permanent injunctive relief with regard to the application of these regulations and HEW's policies in the administering of the Tennessee AFDC Program.

### V.

Because the named plaintiffs filed their cause of action easily within the briefest statute of limitations period applied in this state, the issue of the limitation on this action goes only to definition of a certified class, i. e., to the number of persons receiving any remedial notice ordered by this Court. Since the existence or certification of the class is an issue which is presently reserved, however, statute of limitations issues are reserved as well.

### VI.

The plaintiffs have once requested certification as a class. This request was initially denied because "the use of a class action method in this cause is not superior to other available methods for the fair and efficient adjudication of the controversy. This is true because appropriate equitable relief in this case can be ordered by this Court". *Smith, et al. v. Pleasure, et al.*, No. 79–3345, (M.D.Tenn., filed February 28, 1980). Presently before this Court is a motion to reconsider class certification, filed April 1, 1980.

Ruling on class certification is reserved pending further briefing and oral argument by all the parties on the propriety of certification.

### VII.

In addition to declaratory and injunctive relief, plaintiffs seek retroactive benefits which they assert should rightfully flow to them as a result of the defendants' violation of § 606(a). Rulings on relief are reserved however, and a hearing will be held on the possible applicability of *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), to the facts in this case. In addition, the parties will supply to the Court as an exhibit the present valid rules and regulations promulgated by or on behalf of DHS in its administration of the AFDC Program. These must be inclusive and the parties should specifically point up those State rules and regulations which define appeal rights of persons denied benefits either in part or in total.

### VIII.

■ It is well established that a party who prevails under a Section 1983 action is entitled to his attorney's fees pursuant to the Civil Rights Attorney's Fee Award Act

of 1976, 42 U.S.C.A. § 1988. That Act states that "... In any action or proceeding to enforce a provision of Section 1981, 1982, 1983 ... the Court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs". Costs have traditionally been awarded without regard for the State's Eleventh Amendment immunity. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). This is true even when a constitutional claim provides a nonfrivolous jurisdictional base but is decided by looking solely to a federal statute. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Seals v. Quarterly County Court of Madison County, Tennessee*, 562 F.2d 390 (6th Cir. 1977).

■ The Court exercises its discretion in assessing attorney's fees to the State defendants as costs in the case. In its defense, DHS places responsibility for enforcement of the flawed policy at issue upon HEW. This responsibility is misplaced however; DHS failed to seek a declaratory judgment, a remedy which could have been pursued by its salaried attorneys. DHS cannot now be heard to complain that free legal services are not provided it by the plaintiffs.

Attorney's fee awards are crucial to vigorous enforcement of the civil rights statutes covered by Section 1988. Indeed, to fail to award counsel fees against the federal government in a case such as this frustrates the basic purpose of the Section. Where the defendants are both the state and federal governments, the plaintiffs are not merely "private attorneys general", they are the only attorneys general. In addition, these public defendants are arrayed against economically weak private plaintiffs, made more feeble by violation of these particular civil rights.

■ However, the federal treasury cannot be reached at this point in our history. 28 U.S.C.A. § 2412 (1978) is consistently construed as immunizing the federal government against Section 1988 since there is no express statutory authority to the contrary. *N.A.A.C.P. v. Civiletti*, 609 F.2d 514, (D.C.Cir.1979), appeal pending;

*Shannon v. U. S. Dept. of HUD*, 577 F.2d 854 (3rd Cir. 1978); *cert. den.* 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978). There is little authority to the contrary.

An Order in accordance with the foregoing has been entered this date.

### APPENDIX A

PAM § 2151:

*Evidence Regarding Relationship*

In order to receive AFDC for a child, it must be established that the applicant/grantee relative is within one of the specified degrees of relationship to the child. Documentary evidence of relationship is required except as specified in 9 below. The following sources of verification are listed in order of priority:

1. *Birth certificates or copies of birth certificates or BVS records* which establish relationship of the child to his parents; and in instances when applicant/grantee relative is other than the parent, which establish the relationship of the child's parents to the relative requesting AFDC for the child. Adoption and legitimation records also establish relationship of the child to his parent(s).

2. *Census Bureau Records* listing the children belonging to a particular family.

3. *Statements of physicians or midwives* who attended the births and remember the names of the people involved.

4. *Family Bible or other family records* which are written in ink and have not been altered, wills and deeds to property naming individuals and specifying relationships.

5. *Social Agency records* including those of DHS which are at least one year old and which consistently specify the degree of relationship of the applicant/grantee relative to the child.

6. *Juvenile Court, other Court and Hospital Records.*

7. *Insurance policies* at least one year old in which relationship of the child to the applicant/grantee relative is specified.

8. *Copies of income tax returns* listing the child as a specific relative, and school records which specify relationship.

9. In the *absence* of *any* documentary proof of relationship, the relative's statement as to the reason(s) there is no proof, plus his detailed statement as to how he is related to the child, plus at least one notarized statement from a person in a position to know the facts of the situation in which he describes the relationship and how he knows it to be true will be acceptable.

Copies of marriage and divorce records, legitimation records or statements from Court Clerks concerning marriages and divorces or legitimation will be required to establish relationship when the relationship is through the paternal line.