IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2002 Session

## STATE OF TENNESSEE EX REL. MARY E. CLARK
## v. VERNON A. WILSON

**Appeal from the Circuit Court for Davidson County**
**No. 95D-2682     Carol L. Soloman, Judge**

---

**No. M2001-01626-COA-R3-CV - Filed December 23, 2002**

---

The State of Tennessee, ex rel. Mary E. Clark appeals the final order of the trial court awarding retroactive child support from the date DNA test results established the appellee as the father of the child in question, instead of from the date of the parties' separation by divorce decree entered almost six years earlier. We find that the trial court incorrectly ordered retroactive child support from a date other than the date of the parties' separation and failed to make the required written findings to support a deviation from the guideline amount in its award of retroactive child support. Therefore, we vacate the trial court's decision and remand for further proceedings consistent with this opinion.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and JOHN A. TURNBULL, SP. J., joined.

Paul G. Summers, Attorney General and Reporter; Stuart F. Wilson-Patton, Senior Counsel; Pamela Finch, for the appellant, Mary E. Clark.

Mark Walker, Goodlettsville, Tennessee, for the appellee, Vernon A. Wilson.

**OPINION**

I. Facts

Mary E. Clark and Vernon A. Wilson were married on April 1, 1993, when Ms. Clark was eight months pregnant. On May 16, 1993, slightly over one month into the marriage, the child was born. Before their marriage the parties had dated for approximately ten months to one year. However, Ms. Clark admitted to having had intercourse with another man during the period of conception. Ms. Clark testified she told Mr. Wilson he could be the father of her child. Mr. Wilson was listed as the child's father on her birth certificate. Ms. Clark also testified she always told Mr.

Wilson he was the child's father, but also testified that he always denied he was the father. Ms. Clark and Mr. Wilson were divorced by decree entered on November 7, 1995. No child support was set in the divorce decree or subsequent to the divorce because Ms. Clark stated in documents to the court that there were no children born of the marriage. Mr. Wilson did not challenge or correct Ms. Clark's representations to the court that there were no children of the marriage.

Four and a half years after the divorce, a Petition to Modify the divorce decree was filed, alleging that Mr. Wilson was the father of the child, and, thus, was responsible for child support retroactive to the final divorce decree. Mr. Wilson disputed paternity of the child and filed a Motion for DNA testing to Determine Parentage. An Agreed Order for DNA Testing to Determine Parentage was entered. DNA test results received on September 18, 2000, confirmed Mr. Wilson as the father of Ms. Clark's child. An Agreed Order of Support was entered on January 10, 2001, ordering Mr. Wilson to pay child support in the amount of $290.00[1] per month in accordance with the Tennessee Child Support Guidelines commencing December 22, 2000. The Agreed Order reserved the matter of retroactive child support to a hearing set for February 8, 2001. By order entered on June 19, 2001, the Trial Judge awarded retroactive child support from the date of the results of the DNA test, September 18, 2000.[2] The trial court found that Ms. Clark was not a credible witness, and that it would be inequitable to require Mr. Wilson to pay support before the time he had reason to believe the child was his. The State of Tennessee, ex rel. Mary E. Clark appealed.

## II. Child Support

It is well settled under Tennessee law that every parent is obligated to support his or her children during their minority. Tenn. Code Ann. § 34-1-102; *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 247 (Tenn. Ct. App. 2000). This obligation to provide support exists without a court order. The obligations of parents to support, care for, and nurture their children are joint, and the extent of their duty to support depends on their ability to provide that support. *State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 600-01 (Tenn. Ct. App. 1997).

The parent's obligation to support, as well as the child's concomitant right to support, exist whether the parents are married, divorced, or have never been married. When married parents divorce, the court is authorized to provide for support of the minor children. Tenn. Code Ann. §§ 36-5-101(a)(1) and (a)(2)(A). When paternity of a child born out of wedlock is established, the father is required to provide support, as set by the court, for the child's benefit. Tenn. Code Ann.

---

[1]Mr. Wilson's brief states that the amount of child support in the Order was for $229.00 per month, but according to the record the amount Mr. Wilson was ordered to pay was $290.00 per month. The order explained that Mr. Wilson would pay $66.92 plus the $3.35 fee per week for a total of $70.27 per week.

[2]The trial court ordered Mr. Wilson to pay $870.00 as back child support from the date of the DNA test results. According to the Statement of the Evidence, the amount of child support that would have accrued from the date of the divorce until the date support was first set, based upon Mr. Wilson's income during that time, was $16,787.00.

§ 36-2-311; *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). The legal duty of support exists in all cases. *Id.* 21 S.W.3d at 191 (citing *Smith v. Puett*, 506 F. Supp. 134, 142 (M.D. Tenn. 1980)).

The trial court based its determination on its finding that the father "had reason to believe he was not the father" and, therefore, requiring support for the time before his paternity was conclusively established would be inequitable. This reasoning is in error for two reasons: (1) a biological father's belief as to the paternity of the child, even the biological father's lack of knowledge of the existence of the child, cannot act to automatically deprive a child of support; and (2) the parties were married when the child was born, making Mr. Wilson the child's presumptive father unless or until that presumption was rebutted. We note the presumption herein was not rebutted but, instead, was confirmed by scientific testing. Thus, Mr. Wilson has always been the child's legal as well as biological father and has had a continuing obligation to provide support.

### III. Support for Children Born Out of Wedlock

The fact situation where a putative father is unsure of the paternity or unaware of existence of a child more commonly arises when the parents have never been married to each other. In that situation, the law does not presume fatherhood. However, statutory procedures exist for acknowledging and establishing paternity. Tenn. Code Ann. § 36-2-305. As our Supreme Court has explained:

> Our paternity and child support statutes and the Child Support Guidelines evince a policy that children should be supported by their fathers. The paternity statutes provide a process by which the putative father can be identified. Once identified, the father is required to furnish support and education for the child. The paternity statutes incorporate both the child support provisions pertaining to divorce decrees as well as the Child Support Guidelines.

*Berryhill*, 21 S.W.3d at 190-91 (citations omitted).

Once paternity is established, the courts are to set prospective child support as well as retroactive support. Tenn. Code Ann. § 36-2-311(a)(11); *Berryhill*, 21 S.W.3d at 192; *Kaatrude*, 21 S.W.3d at 248. In that situation, a father's responsibility for support for a child of his born out of wedlock arises at the date of the child's birth. *State ex rel. Coleman v. Clay*, 805 S.W.2d 752, 755 (Tenn. 1991).

In *Coleman*, the Supreme Court interpreted the then-existing paternity statutes to authorize a retroactive award for support in conjunction with an order of paternity but also to give the courts broad discretion to determine the amount of such a retroactive award. The court further stated:

> What the juvenile judge lacks is discretion to limit the father's liability for child support in an arbitrary fashion that is not consistent with the provisions in [the paternity statutes]. For example, nothing in those sections can be interpreted to

restrict the father's liability to the date when he knows for certain that the child in question is his. Such a limitation not only amounts to judicial legislation, but also encourages the putative father to avoid legitimately instituted court proceedings and to delay testing . . . in the hope of minimizing the ultimate support award.

*Coleman*, 805 S.W.2d at 755.

In *Coleman*, paternity proceedings were not instituted until the child was fourteen years old. Although the father initially denied paternity, he occasionally visited the child. Blood tests confirmed that the defendant was the child's father. The trial court entered a paternity decree and set prospective support. The court also awarded retroactive support only back to the date when blood test results were available which established the defendant was actually the child's father. *Id*. 805 S.W.2d at 754. The Supreme Court found that "upon determination of paternity, the father of a child born out of wedlock is statutorily liable for support from and after the child's birth." *Id*. 805 S.W.2d at 755. The court explicitly rejected the trial court's implicit holding that the father's liability is retroactive only to the date on which he knows for certain that he is the child's father.

*Coleman* was decided in 1991, and the General Assembly made subsequent changes in the statutory procedures regarding the establishment of paternity other than by adoption. *See* Tenn. Code Ann. §§ 36-2-301 to -322. However, these changes did not affect the substance of the provisions relied upon in *Coleman*. Tenn. Code Ann. § 36-2-311; *Berryhill*, 21 S.W.3d at 190-92.

Thus, the obligation to support a child exists from the child's birth, and upon entry of an order establishing paternity, the father is liable for support back to that date. *Coleman*, 805 S.W.2d at 754-55.

A father's beliefs concerning his responsibility for a child are irrelevant in cases of this sort. It is neither uncommon nor unexpected for a father to be disinclined to support a child he believes is not his. However, once paternity is established, the obligation to provide support exists notwithstanding the father's belief that the child is not his or the fact that, either by choice or circumstance, he has not been a part of the child's life.

*Kaatrude*, 21 S.W.3d at 248.

## IV. Support for Children Born During Marriage

Under Tennessee law, a man is presumed to be the father of a child, when, as in this case, "the man and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce. . . ." Tenn. Code Ann. § 36-2-304(a)(1). This presumption may be rebutted "in an appropriate action," Tenn Code Ann. § 36-2-304(b)(1), by a preponderance of the evidence. Tenn. Code Ann. § 36-2-304(b)(3).

In the situation of married parents, the amount of child support is to be set at the time of divorce. Tenn. Code Ann. § 36-5-101(a)(1). Courts are authorized to provide for the future support of children by fixing a definite amount to be paid in regular installments or otherwise, as circumstances may warrant. Tenn. Code Ann. § 36-5-101(a)(2)(A). Further, courts must apply the child support guidelines developed by the Department of Human Services in determining the amount of such support. Tenn. Code Ann. § 36-5-101(e)(1)(A). The guidelines require a noncustodial parent to pay support which is "a flat percentage of the obligor's net income," Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2), depending on the number of children to be supported. The amount dictated by the guidelines is to be applied as a rebuttable presumption of the correct amount of support. Tenn. Code Ann. § 36-5-101(e)(1)(A).

Child support is established prospectively at the time of divorce. In that situation, however, an initial order of support must include an amount due for monthly support from the date of the parties' separation. Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(1)(e).

Obviously, a court can enter an appropriate order for support upon divorce of the child's parents only if the court is aware that a minor child is involved. Divorcing parents cannot deprive a child of support by agreeing that the husband is not the father of the child and agreeing to relieve that party from any support obligation. *Witt v. Witt*, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996). Further,

> a child or children born to a marriage cannot be rendered illegitimate, directly or indirectly, in any divorce action or other proceeding unless the child and or children are made parties to the action, afforded the protection of a guardian ad litem, and counsel, if necessary.

*Id.*

In *Witt*, the parents signed a marital dissolution agreement stipulating that a child was born during the marriage but that the husband was not the father of the child and that the wife was not living with the husband when the child was conceived. A divorce was granted on the grounds of irreconcilable differences, and the decree approved the marital dissolution agreement. Almost two years later the State, which had been providing AFDC benefits to the mother, sought to impose child support obligations on the former husband and to establish paternity. Blood testing revealed that the former husband was the child's biological father.

This court upheld the trial court's judgment setting aside, pursuant to Tenn. R. Civ. P. 60, that portion of the divorce decree dealing with paternity and child support because those provisions were void as against public policy. *Id.* 929 S.W.2d at 362.[3]

The parties herein did not enter into the same agreement in their marital dissolution agreement as the parties in *Witt*. However, the effect was the same: the child born during the marriage was deprived of support by his or her legal and biological father. This was accomplished without the protections guaranteed in *Witt* or in the statute quoted above because of omissions in the divorce papers.

The record herein includes the complaint for divorce, citing grounds of irreconcilable differences, filed by the wife, now Ms. Clark. The form complaint includes a space for the complainant to identify "minor children born of this marriage and their dates of birth." The word "None" is entered in that space. Although Mr. Wilson did not sign the complaint, he did sign the marital dissolution agreement which was filed with the court and which did not mention the child.

A divorce on the ground of irreconcilable differences requires that the parties make an agreement regarding support of minor children and that the court find such agreement reasonable, Tenn. Code Ann. § 36-4-103(b), reaffirming the legislature's intent that children born during a marriage be provided support upon divorce. Because the divorce decree herein did not address the issue of support, there is no provision which must be set aside. However, because the decree did not make provision for support of the child, it should be modified to reflect custody and support decisions related to the child.

The trial court herein found Ms. Clark was not a credible witness because in her divorce complaint she did not list any children born to the marriage. This finding led the trial court to discount Ms. Clark's testimony that she told Mr. Wilson he was the father. Because the child was born during the marriage, the husband's belief as to the paternity of the child was not relevant. Consequently, the credibility determination has no effect on the legal issues to be decided. Further, while Ms. Clark failed to disclose, or intentionally made an inaccurate statement, Mr. Wilson did not correct the error. In any event, neither one parent, nor both parents by agreement, can deprive a child of support. *Berryhill*, 21 S.W.3d at 191-92; *Witt*, 929 S.W.2d at 363.

---

[3]In 2000, the legislature adopted a similar result by providing:

> No provision, finding of fact or conclusion of law in a final decree of divorce or annulment or other declaration of invalidity of a marriage which provides that the husband is not the father of a child born to the wife during the marriage or within three hundred (300) days of the entry of the final decree, or which names another person as the father of such child shall be given preclusive effect unless scientific tests to determine parentage are first performed and the results of the test which exclude the husband from parentage of the child or children or which establish paternity in another person are admitted into evidence. . . .

2000 Tenn. Pub. Acts, ch. 922 § 9, now codified at Tenn. Code Ann. § 36-5-101(t). *See also* 2000 Tenn. Pub. Acts, ch. 922 § 4, now codified at Tenn. Code Ann. § 36-2-304(b)(4).

Had the complaint or marital dissolution agreement disclosed to the court that a child was born during the marriage, the court could have taken appropriate action to determine the parentage and to protect the child's right to support. Regardless of which parent may bear more responsibility for the omission, it is the child whose interests are paramount.

Because the child was born during the marriage, Mr. Wilson was the presumptive father, and support should have been set at the time of the parties' divorce. Because the parties failed to disclose to the court the fact that a child had been born during the marriage, there was no judicial determination of the child's paternity. The presumption that the husband was the child's father was not rebutted. The only evidence ever introduced in court was at the modification hearing involved in this appeal, and that evidence proved, rather than rebutted, that Mr. Wilson was the child's father.

V. Duration and Calculation of Retroactive Support

The goal of statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent's or parents' financial resources. *Kaatrude*, 21 S.W.3d at 248-49. The Child Support Guidelines state one of their goals is to "ensure that when parents live separately, the economic impact on the child(ren) is minimized . . . ." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(2)(e).

It is only because of the unique facts of this case and the trial court's emphasis on the reasonableness of Mr. Wilson's belief that he was not the child's father that we have discussed retroactive support in two contexts: divorce and establishment of paternity. The child involved in this appeal was born during the marriage, and support should have been set at the time of the divorce.

As more fully explained below, however, there is now little difference in how courts are to award or calculate retroactive support between orders for support as part of a divorce and those resulting from the establishment of paternity of a child born to parents who were not married to each other at the time of the birth.

The child support guidelines apply to support ordered as part of a divorce decree as well as support ordered upon the establishment of paternity of a child born to parents who are not married to each other. *Berryhill*, 21 S.W.3d at 190-91; *Kaatrude*, 21 S.W.3d at 249. The guidelines apply in all actions brought to establish support. Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3). Under the guidelines:

> In cases where initial support is being set, a judgment must be entered to include an amount due for monthly support from the date of the child's birth or date of separation or date of abandonment whichever is appropriate, until the current support order is entered.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(1)(e).

Because support should have been set at the time of divorce, the appropriate date for determining retroactive support is the date of the parties' separation. According to the Statement of the Evidence, Ms. Clark moved out of the marital home in March of 1994. The record is silent as to whether any support was provided after that time.

Although this case presents an unusual situation in that neither prospective nor retroactive support was awarded at the time of divorce, we are not without guidance as to how to calculate retroactive support. First, this court has considered situations where initial child support was improperly calculated at the time of the divorce. In that situation, the support is to be recalculated, applying the guidelines to the obligor parent's actual income, and any amounts which should have been paid but were not are arrearages. *Anderton v. Anderton*, 988 S.W.2d 675, 681-82 (Tenn. Ct. App. 1998); *Smith v. Smith*, No. M2000-01094-COA-R3-CV, 2001 Tenn. App. LEXIS 320, at *23-*24 (Tenn. Ct. App. May 2, 2001) (no Tenn. R. App. P. 11 application filed).

Second, the child support guidelines now provide direction. *Berryhill*, 21 S.W.3d at 192. The guidelines "carry what amounts to a legislative mandate." *Id*. 21 S.W.3d at 192 (quoting *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993)). Under the guidelines, when the court determines the amount of retroactive support due when entering the initial order for support, the amount of past support:

> must be calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct unless rebutted by either party. An amount should be included in the order to reduce the arrears judgment on a monthly basis within a reasonable time.

Tenn. Comp. R. & Regs., ch 1240-2-4-.04(1)(e).

The Tennessee Supreme Court has determined that the 1994 inclusion in the guidelines of provisions regarding retroactive support has limited the courts' discretion in making such awards in orders establishing paternity. *Berryhill*, 21 S.W.3d at 193. Although courts continue to have discretion, the "broad discretion" to determine the amount of retroactive awards described in *Coleman*, 805 S.W.2d at 755, has been narrowed, and any discretion "must be exercised within the strictures of the Child Support Guidelines." *Berryhill*, 21 S.W.3d at 193.

Thus, the guidelines must be applied. The record herein includes Mr. Wilson's tax returns for the years from 1995 through 2000. However, these exhibits are unaccompanied and unexplained by testimony. Consequently, upon remand, the trial court should apply the guidelines by, first, determining Mr. Wilson's average income over the past two years and, then, after giving the parties the opportunity to present additional evidence, determining whether either party has rebutted the presumption that this average amount is the correct amount. *See Berryhill*, 21 S.W.3d at 193-94 (finding that proof of actual income rebutted the presumption). Then, using the instructions and

formula in the guidelines, the court should determine the amount of child support which would have been owed under the guidelines.[4]

## VI. Deviation from Guidelines

Having determined the amount of retroactive support that would be owed under the guidelines, the trial court has the discretion to determine whether facts exist to justify a deviation from the guidelines. Tenn. Code Ann. § 36-5-101(e)(1)(A) provides that:

> In making its determination concerning the amount of support any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance.

In addition, Tenn. Comp. R. & Regs., ch. 1240-2-4-.01(2) provides that:

> T.C.A. 36-5-101 requires that there must be a rebuttable presumption in all child support cases that the amount of child support determined by an application of these guidelines is the correct amount to be awarded unless the court makes a written or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case. Such a finding would sufficiently rebut the presumption in that case. The rebuttable presumption must be applied to all child support awards even if the order is being sought for a retroactive period before October 13, 1989.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(7) provides that:

> These guidelines shall be applied as a rebuttable presumption in all child support cases. If the court finds that the evidence is sufficient to rebut the presumption that the application of the guidelines is the correct amount to be awarded then the court must make a written or specific finding that the application of the child support guidelines would be unjust or inappropriate in that particular case. Findings that rebut these guidelines must state the amount that would have been required under the

---

[4] The parties have stipulated this amount to be $16,787. We note that stipulation must be approved by the court before using the guidelines to review the adequacy of the stipulation. Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(4). We also note the stipulation covers the period back to the date of divorce, not to the date of separation.

guidelines and include a justification for deviation from the guidelines which takes into consideration the best interest of the child.

The Supreme Court has specifically directed application of these provisions to a retroactive support award. *Berryhill*, 21 S.W.3d at 193. The court further explained:

The guidelines provide a general formula for calculating the appropriate amount of child support based on an obligor's income and include a procedure which permits limited deviation downward from the general formula. The guidelines also mandate a deviation upward under certain circumstances. The guidelines are a minimum base for determining child support obligations. "The guidelines expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren); where the obligee clearly has a lower level of child care expense than that assumed in the guidelines; and where the obligor is saddled with 'extreme economic hardship.'" *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996). "Although the rule does not purport to set forth an exhaustive list of instances in which downward deviation is allowed, these specific instances nevertheless are a powerful indication as to the types of situations in which it is contemplated under the guidelines." *Jones*, 930 S.W.2d at 545. The guidelines indicate that the court "shall" increase the award if the obligor is not providing health insurance, if the obligor is exercising less than average visitation, if extraordinary medical and educational expenses exist, or if the court finds that equity requires it.

*Id.* (some citations omitted).

Thus, on remand, the trial court may consider whether a deviation from the amount of retroactive support dictated by the guidelines' formula is justified, under appropriate standards. The guidelines provide that in deviating from the guidelines "primary consideration must be given to the best interest of the child(ren) for whose support the guidelines are being utilized." Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(5).[5] The trial court is required to first determine the amount due under the guidelines and then make specific findings justifying any deviation.

## VII. Conclusion

The trial court incorrectly limited retroactive support to the date of DNA test results establishing paternity instead of the date of the parties' separation. To the extent the court's ruling can be considered a decision to deviate from the child support guidelines, the deviation is not

---

[5]We have held that "an award for retroactive child support is generally considered to have two purposes: (1) to benefit the parties' child; and (2) to reimburse the custodial parent for contributing more than [their] fair share to the child support." *Berryhill v. Rhodes*, No. W2001-00748-COA-R3-JV, 2002 Tenn. App. LEXIS 331, at *22 (Tenn. Ct. App. May 2, 2002) (no Tenn. App. P. 11 application filed) (citing *State ex rel. Stewart v. Lockett*, No. M2001-00809-COA-R3-JV, 2002 Tenn. App. LEXIS 66, at *4 (Tenn. Ct. App. Jan. 30, 2002) (no Tenn. R. App. P. 11 application filed) (citing *Kaatrude*, 21 S.W.3d at 248)).

supported by the required findings of fact.  For those reasons, we vacate the judgment.  We have determined that the case should be remanded for proceedings in which the parties shall be given the opportunity to present additional evidence relevant to the appropriate standards and for the trial court to make the requisite determinations and findings.  Costs of this appeal are taxed to the appellee, Vernon Wilson.

_____
PATRICIA J. COTTRELL, JUDGE