**STATE of Tennessee, ex rel. Mary Alvine COLEMAN, Plaintiff–Appellee,**

v.

**Alvin Lee CLAY, Defendant–Appellant.**

Supreme Court of Tennessee, at Jackson.

Feb. 25, 1991.

L.L. Harrell, Jr., Trenton, for defendant-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Stuart F. Patton, Asst. Atty. Gen., Nashville, Theodore H. Neumann, Julie Alexander Grinalds, Asst. Dist. Attys., Trenton, for plaintiff-appellee.

## OPINION

DAUGHTREY, Justice.

We granted review in this case to permit re-evaluation of the juvenile court's limited child support award, entered as a part of a paternity decree naming the defendant, Alvin Clay, as the father of Kristi Coleman. We conclude that the judgment of the Court of Appeals, remanding the case to the juvenile court, was proper, and we therefore affirm.

The dispute on appeal concerns the legal effect of the 14–year delay between Kristi's birth and the initiation of paternity proceedings against Clay by the child's mother, Mary Coleman. The juvenile court held that Clay was liable for Kristi's support only from the date on which he knew for certain that he was Kristi's father. The Court of Appeals, interpreting the support provisions of the paternity statute, T.C.A. § 36–2–108, held to the contrary that the father was responsible for the child's support "from and after its birth." We agree with the intermediate court's determination that the trial court erred in limiting liability. We also agree that the father has failed to establish laches as an equitable defense in this case.

Kristi's parents met in 1969, while they were students at Lane College in Jackson, Tennessee. They had intimate relations over the next two years, and Mary Coleman learned that she was pregnant in January, 1972. When informed by Coleman that she was pregnant, Alvin Clay at first denied that he was the father.

Kristi Coleman was born on June 25, 1972. Despite his initial denial of paternity, Clay came from his home in Arkansas to visit Mary Coleman and the baby in August and September, 1972. According to Coleman, Clay bought the baby diapers and medicine, and he promised to support the child. However, after he returned to Arkansas, he did not send Coleman any money, although he did visit Kristi again when she was two or three years old and brought her some clothes. About this time, Coleman consulted an attorney, seeking to get support for her child from Clay. She did not bring a paternity suit at that time, however, because she had no money and, she said, the attorney told her nothing could be done because the father was a resident of Arkansas.

Clay next saw the child in 1977 at a Coleman family wedding and again in 1981, when he came to visit Kristi. Her mother once more asked for financial assistance, but to no avail. She later began calling Clay at home in Arkansas in a futile attempt to get support for the child. She finally instituted this suit in 1986.

In the meantime, Clay had divorced his first wife, by whom he had two sons, and had remarried. He had two daughters by his second wife, the older one adopted. His younger daughter was seriously ill with an unspecified but apparently terminal illness. Clay and his wife had an annual income of over $40,000, but the family's finances had been substantially impaired by the daughter's illness. At least one of Clay's sons has now reached the age of majority, as has Kristi.

Coleman's paternity suit, initiated by the local district attorney's office, was not filed until Kristi was 14 years old. Alvin Clay succeeded in delaying entry of judgment on the petition for over two years, by refusing to accept service of process, failing to ap-

pear in court, requesting various continuances, demanding not one but two separate blood tests, and successfully petitioning for a new trial, despite his voluntary absence at the first one. Both blood tests showed, without question, that Alvin Clay is Kristi's father. The juvenile court judge finally entered a paternity decree on November 9, 1988.

■ In that decree, the judge awarded prospective support in the amount of $25 per week and ordered Clay to provide medical insurance for Kristi. The judge also ordered back support in the same weekly amount, but retroactive only to February 1, 1988, principally on the ground that it was the first date when the certified blood test results were available, establishing that Clay was actually the child's father.[1]

■ We conclude that this limitation was improper, because it cannot be squared with the provisions of Tennessee's paternity statutes. Under T.C.A. § 36–2–102, the father is responsible both for the child's support and for the expenses of pregnancy and birth, as follows:

> The father of a child born out of wedlock is liable for the necessary support and education of the child. He is also liable for the child's funeral expenses. He is liable to pay for the expenses of the mother's confinement and recovery, and is also liable to pay such expenses, including counsel fees, in connection with her pregnancy as the court in its discretion may deem proper.

T.C.A. § 36–2–108 governs entry of the paternity decree and provides in pertinent part:

> (a) If the finding be against the defendant, the court shall make an order of paternity and support, declaring paternity and for the support and education of the child, and may order a change of name.

---

1. Although the juvenile judge indicated that he had also considered the mother's 14–year delay in filing the petition and the father's other family obligations, it is clear that receipt of the test results was the controlling factor in this determination. A decision to hold the mother wholly responsible for any delay, even if proper under the statute, would make the date of filing the controlling factor. The father's ability to pay is relevant to the amount of the retroactive order and the method of its payment in the future, but it should not be taken to extinguish his statutory liability for the child's support, unless he is able to show that he cannot afford to pay anything at all, no matter how nominal the award.

(b) The order of paternity and support shall specify who is to have custody of the child, and the sum to be paid monthly or otherwise, through the clerk of the court, until the child reaches the age of majority, and as otherwise provided by statute. *In addition to providing for the support and education, the order shall also provide* for the payment of the necessary expenses incurred by or for the mother in connection with her confinement and recovery; for the funeral expenses if the child has died; *for the support of the child prior to the making of the order of paternity and support;* and such expenses in connection with the pregnancy of the mother as the court may deem proper. The court shall set a specific amount which is due in each month to be paid in (1) or more payments as the court orders. (Emphasis supplied.)

The Court of Appeals, relying upon the emphasized language in § 36–2–108, held correctly that the father's responsibility for support of a child of his born out of wedlock arises at the date of the child's birth. Because the statute also permits the juvenile court to make a retroactive award for expenses incurred in the support of the child prior to the entry of the paternity decree, such an award can be made back to the date of the child's birth, under appropriate circumstances. Obviously, the juvenile judge has broad discretion to determine the amount of such a retroactive award, as well as the manner in which it is to be paid.

What the juvenile judge lacks is discretion to limit the father's liability for child support in an arbitrary fashion that is not consistent with the provisions in T.C.A. § 36–2–102 and § 36–2–108. For example, nothing in those sections can be interpreted to restrict the father's liability to the date when he knows for certain that the child in question is his. Such a limitation not only amounts to judicial legislation, but also encourages the putative father to avoid legitimately instituted court proceedings and to delay testing, as did the defendant in this case, in the hope of minimizing the ultimate support award.

We therefore affirm the holding by the Court of Appeals to the effect that upon determination of paternity, the father of a child born out of wedlock is statutorily liable for support from and after the child's birth. We further agree that the statute gives the juvenile court the discretion to order a retroactive support award back to that date, the amount and method of payment to be determined by the juvenile judge in light of the circumstances of the case and consistent with the standards which normally govern the issuance of child support orders. *See* T.C.A. § 36–2–108(d). We reject the implicit holding by the juvenile court in this case that the father's liability is retroactive only to the date on which he knew for certain that he was the child's father.

 As did the Court of Appeals, we also reject the defendant's argument that Mary Coleman should be denied recovery because she is guilty of laches. In order to establish such a bar, more than mere delay must be shown. *Murphy v. Emery,* 629 S.W.2d 895, 897–98 (Tenn.1982). Indeed, the touchstone of laches is prejudice to the other party, and here, no actual prejudice of the kind contemplated by law has been demonstrated by the defendant. We do find, however, that the mother has waived recovery for expenses incurred in connection with her pregnancy and Kristi's birth, since no request for such reimbursement was made, and there is no proof in the record to support such an award.

The judgment of the Court of Appeals is affirmed. The case is remanded to the Gibson County Juvenile Court for further proceedings. Costs will be taxed to the appellant.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.