## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
### AT JACKSON
_____

|  |  |  |
|---|---|---|
| **KERYN HICKERSON,** | ) | Shelby Law No.78272 |
|  | ) |  |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9511-JV-00249 |
|  | ) |  |
| **JERRY FINCHUM,** | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

_____

From the Juvenile Court of Shelby County at Memphis.
**Honorable A. V. McDowell, Special Judge**

**FILED**

**Jan. 22, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**Sheila D. Brown**,
LAW FIRM OF SHEILA D. BROWN, Memphis, Tennessee
Attorney for Defendant/Appellant.


**David R. Huggins**,
ARTHUR RAY LAW OFFICES, Memphis, Tennessee
Attorney for Plaintiff/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.** : (Concurs)
**TOMLIN, Sr. J.** : (Concurs)

This appeal concerns whether the appellant, Jerry Finchum ("Finchum" or "Father"), should be legally required to pay retroactive child support for his child, Elizabeth Jane Hickerson, born February 16, 1983 to the appellee, Karen Hickerson ("Hickerson" or "Mother"). The juvenile court awarded such support, in the amount of $31,080, and Finchum has appealed. For reasons set forth below, we affirm.

The initial paternity action in this matter was filed by Mother against Finchum in the Juvenile Court of Memphis and Shelby County on March 25, 1983, but was ultimately dismissed for lack of personal jurisdiction over Finchum.[1] Approximately eleven years later, in August 1994, Mother filed a second petition to establish paternity and set support against Finchum[2] which is the subject of this appeal. In it, she sought support and maintenance for the child including those expenses for which she is entitled under T.C.A. §§ 36-2-102, 108. The matter was heard before the juvenile court referee. Court ordered blood tests of December 1994 established a 99.94% probability that Finchum is the child's natural father. On January 20, 1995, the referee found as such and recommended, *inter alia*, the legitimation of the child; the payment by Finchum of all medical expenses incident to her birth, one-half of the child's medical expenses not covered by insurance and child support in the amount of $252 monthly beginning January 30, 1995; and the continuation of the case as to further matters including back support. The referee's findings and recommendations were confirmed as the decree of the juvenile court, which thereafter entered an income assignment order for collection of the child support.

In April 1995, Mother filed the following affidavit stating, as pertinent here:

I was living with Mr. Finchum in Texas in 1982.

I informed Mr. Finchum in June, 1982, of my pregnancy. . . .

I came to Memphis to visit family in November, 1982 and anticipated, upon my return to Texas, that everything would be the

---

[1] Finchum was served with process through the secretary of state in New Mexico. The record shows that Mother and Father began their relationship while in college, with Mother subsequently moving to Father's home in Nashville. They then moved to Odessa, Texas, where Mother became pregnant.

[2] At this time, Finchum was a resident of Tennessee.

same; Mr. Finchum and I had, in fact, discussed the idea of marriage on at least one occasion.

To my surprise, however, Mr. Finchum informed me that I should not come back to Texas, because he was transferring to Albuquerque, New Mexico. He further informed me that he had a new girlfriend, . . . .

I therefore, of necessity, stayed in Memphis with family.

Elizabeth was born in Memphis, on February 16, 1983.

Subsequently, I suffered severe medical problems for approximately one year, which were related to the trauma of the birth, and to the circumstances surrounding the birth.

. . . I also experienced serious emotional and psychological difficulties as a result of Mr. Finchum's conduct as it related to the birth of our child.

I endured a lengthy convalescence, including physical therapy, and I was unable to work for nearly one year. I contacted Mr. Finchum and informed him of the birth, and of the problems related to it, but he was completely unsympathetic. He neither offered nor supplied any help whatsoever, despite the fact that he was gainfully employed and well able to do so. At no time during this brief period of contact, did he deny that he was Elizabeth's father, or give any indication that he would ever do so.

Despite my many physical and emotional problems, I brought, with the help of my parents, a paternity action against Mr. Finchum, in this court, in late 1983.

Mr. Finchum avoided his obligations at that time by arguing lack of personal jurisdiction, . . . The case was dismissed. . . .

I was unable emotionally or financially to pursue further legal action at that time.

I attempted to contact Mr. Finchum several times over the course of the next four years, by mailing letters to the address of his family in Tennessee, the only address at which I thought I might be able to contact him. . . . I do not know for certain whether he ever received these items.

Mr. Finchum knew or could easily have ascertained where Elizabeth and I lived, as I remained in Memphis, and maintained a listing in the telephone directory the entire time.

I continued to attempt to contact Mr. Finchum, through his family, through 1987, but to no avail.

. . . .

I finally reached the point in 1994 where I was able both financially and emotionally to undertake what I felt would be a difficult legal proceeding to receive support from Mr. Finchum.

After further hearing, the referee recommended that the prior order of the court be

modified to award child support to Hickerson prior to the date paternity was established. The juvenile court judge confirmed the recommendation. Father was ordered to pay back support of $31,080 at a monthly rate of $271.95 over the next 12 years, in addition to the regular child support payments.

At Father's request, the matter was reheard before the juvenile court judge.[3] At the rehearing, in June 1995, Finchum testified[4] that during the couple's residency in Odessa, Texas, another man, employed by Mother in her business, lived with them for a time. During this period, Finchum made a two week trip to Nashville and upon his return, was informed by Mother of her pregnancy. Mother subsequently returned to her home in Tennessee. Finchum thereafter received the initial petition for paternity. He asked that blood tests be taken, but Mother refused, giving him no reason for doing so. After the petition was dismissed, Finchum never heard from Mother. He stated that he has 15 siblings, all of whom live in the Nashville area and that "if she wanted to get a hold of me, she could have . . . ." Finchum said that he works a 40 hour week, earning $9 per hour.

On cross-examination, Finchum stated that he was not aware of Hickerson's residency in Memphis during the interim between the filing of the two petitions. He knew, however, that she had family in Memphis, but did not attempt contact with anyone there regarding Hickerson's whereabouts. He never received any correspondence from Hickerson. He further stated:

> [Opposing Counsel]: Did you think it was a possibility [the child] was yours?
>
> Mr. Finchum: I told my attorney I would do anything if it was my child . . .
>
> [Opposing Counsel]: I just want to know if you thought there was a possibility she was yours?
>
> Mr. Finchum: No sir, I didn't. . . .
>
> . . . .
>
> Mr. Finchum: Yes, we slept together, so there was a possibility, . . . .

---

[3]Father also petitioned the court for specific visitation with the child which was granted.

[4]Mother was not present for this hearing. She was represented by counsel, however.

[Opposing Counsel]: But you didn't feel it necessary over the course of eleven years to ever say "Hey, I want a blood test" and get a court to order it for you?

Mr. Finchum: She denied it once . . . .

The trial court "reconfirmed" the referee's ruling, awarding the retroactive child support in the amount herein specified. The monthly payments were set at $147. The court entered an amended income assignment order requiring a monthly deduction of $399 from Father's wages by his employer, Pennacle Steel Processing.

Finchum frames the issues for review as follows:

> I. Is the trial judge required to award retroactive child support?
>
> II. Should retroactive child support be waived where the father shows that he cannot afford to pay anything at all, no matter how nominal the award?

As heretofore noted, Mother seeks those expenses for which she is entitled under T.C.A. § 36-2-108.[5] This statute governs entry of the paternity decree and clearly provides for the awarding of retroactive child support. *See State ex rel. Coleman v. Clay*, 805 S.W.2d 752, 754-55 (Tenn. 1991). With respect thereto, it states:

> (a) If the finding is against the defendant, the court shall make an order of paternity and support, declaring paternity and for the support and education of the child, and may order a change of name.
> (b) The order of paternity and support shall specify . . . the sum to be paid monthly or otherwise, . . . until the child reaches the age of majority, and as otherwise provided by statute. ***In addition to providing for the support and education, the order shall also provide for the payment of the necessary expenses incurred by or for the mother . . . for the support of the child prior to the making***

---

[5]Mother also sought expenses under § 36-2-102, which states:

**Liability of father of child born out of wedlock.** -- The father of a child born out of wedlock is liable for:
(1) The necessary support and education of the child;
(2) The child's funeral expenses;
(3) The expenses of the mother's confinement and recovery; and
(4) Such expenses, including counsel fees, in connection with the mother's pregnancy as the court in its discretion may deem proper.

*of the order of paternity and support;* (Emphasis supplied.)

We point out that Finchum disputes the award of child support only as it relates to the time prior to the establishing of paternity; he does not question the award of prospective support. Finchum contends that the doctrine of laches applies to this case to bar Mother's recovery of retroactive child support. He relies on the fact that she waited some eleven years before pursuing the present action and argues that in so doing delayed her petition to the point that it would now be inequitable to force him to pay support retroactive to the child's birth. He further asserts that Hickerson was negligent in failing to respond to his request for blood tests. As a result, he contends that he has suffered the injury of losing the first eleven years of his daughter's life and has also been prejudiced by the fact that he now has financial obligations "based on his assumption that he was not the child's father." Finchum submits that "[w]hile the courts have been reluctant to rely on laches in cases such as retroactive child support awards, the argument still has some basis under the right set of circumstances." He alternatively argues that an award of retroactive support is in error due to his financial inability to pay any of the amount ordered.

In *Coleman v. Clay*, 805 S.W.2d at 755, the supreme court spoke to the issue of awarding retroactive child support as follows:

> [T]he father's responsibility for support of a child of his born out of wedlock arises at the date of the child's birth. Because the statute [36-2-108] also permits the juvenile court to make a retroactive award for expenses incurred in the support of the child prior to the entry of the paternity decree, such an award can be made back to the date of the child's birth, under appropriate circumstances. Obviously, the juvenile judge has broad discretion to determine the amount of such a retroactive award, as well as the manner in which it is to be paid.
>
> What the juvenile judge lacks is discretion to limit the father's liability for child support in an arbitrary fashion that is not consistent with the provisions in T.C.A. § 36-2-102 and § 36-2-108. For example, nothing in those sections can be interpreted to restrict the father's liability to the date when he knows for certain that the child in question is his. Such a limitation not only amounts to judicial legislation, but also encourages the putative father to avoid legitimately instituted court proceedings and to delay testing, as did the defendant in this case, in the hope of minimizing the ultimate support award.

*Id*.

The court in ***Coleman*** also addressed the issue of laches as an equitable defense to the recovery of retroactive support. There, the father had argued that mother's delay in filing her petition for paternity some fourteen years after the child's birth constituted laches and effectively denied her recovery. ***Id***. The court rejected the contention, holding that in order to establish such a bar to recovery, "more than mere delay must be shown." ***Id***. ***Coleman*** reasoned that the "touchstone" of the doctrine is prejudice to the other party and that in that case no actual prejudice of the kind contemplated by law had been demonstrated. ***Id***.

Clearly, the awarding of retroactive child support, under the appropriate circumstances, has been both sanctioned by our legislature and enforced by the supreme court of this state. Though not mandatory, such an award lies within the sound discretion of the juvenile judge. Thus, in the case at bar, in the absence of a proper defense, the trial court was well within its discretion to make the award at issue here.

Finchum attempts to distinguish ***Coleman*** by pointing out that there the defendant father was shown to have assisted in delaying the proceedings by various means, including refusing to accept service of process, failing to appear in court and demanding multiple blood tests. ***See Id.*** at 754. We are not persuaded. Any distinctions, we believe, are of degree only. In this case, Finchum obviously delayed and totally evaded, for a time, his legal responsibility, knowing that there was a "possibility" he was this child's father, by defending the first paternity action on grounds of lack of personal jurisdiction, a waivable defense. He asserts that Mother refused his request for blood tests. However, if he had proceeded with the initial action, the tests would most certainly have been court ordered. The record is clear that he was represented by counsel at that time. As held in ***Coleman***, proof of mere delay is insufficient to establish laches. We find that Finchum has not shown that he has been prejudiced in the delay of the bringing of this action "of the kind contemplated by law." The fact that he now has financial obligations[6] based on an erroneous assumption that he was not this child's father is of little significance to this Court in light of the entire circumstances involved here. We are satisfied that the doctrine of laches does not apply.

_____

[6]The record reflects that Finchum is married and raising a stepdaughter.

Finchum next attempts to challenge the award by arguing his inability to pay. He relies upon specific language in **Coleman** that "[t]he father's ability to pay is relevant to the amount of the retroactive order and the method of its payment in the future, but it should not be taken to extinguish his statutory liability for the child's support, unless he is able to show that he cannot afford to pay anything at all, no matter how nominal the award." **Id**. at 754 n.1. The record before us fails to establish that Finchum lacks the ability to pay the retroactive support in the manner directed by the trial court. At the time of the hearing, Finchum was gainfully employed, earning approximately $17,000 annually. The record also indicates that he has maintained steady employment in the years prior to this petition.

It results that the judgment of the trial court is affirmed and this cause remanded to the court for any further proceedings herewith consistent. Costs are taxed to the appellant, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
TOMLIN, Sr. J. (Concurs)