IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 1, 2003 Session

## IN RE: CRYSTAL MICHELLE MOATS

**Appeal from the Juvenile Court for Blount County**
**No. 11335-37     William T. Denton, Jr., Judge**

**FILED APRIL 29, 2003**

**No. E2002-01635-COA-R3-JV**

This is a paternity case. Following DNA testing, the parties agreed that Randy L. Garner ("Father") is the biological father of Crystal Michelle Moats (DOB: August 13, 1985) ("the child"). The issues remaining before the trial court were "current support, past due support, and medical payments." Following a bench trial, the court addressed these issues. As pertinent to this appeal, the trial court awarded Mother $1,000 as support for the child from her date of birth to the date of filing of the paternity petition, *i.e.*, September 18, 2000. Mother appeals, contending that the trial court erred in setting the amount of retroactive support for the period prior to the filing of the petition. We vacate the trial court's award of $1,000 and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

R. D. Hash, Maryville, Tennessee, for the appellant, Teresa E. Headrick.

H. Allen Bray, Maryville, Tennessee, for the appellee, Randy L. Garner.

**OPINION**

I.

The parties were never married to each other. Father testified that he was not aware of the child until she was ten years old.[1] He did not say how he first learned that she was allegedly his daughter.

_____

[1] *See State ex rel. Clark v. Wilson*, C/A No. M2001-01626-COA-R3-CV, 2002 WL 31863296, at *2 (Tenn. Ct. App. M.S., filed December 23, 2002) (holding that a father's lack of knowledge of the existence of a child "cannot act to automatically deprive a child of support").

In 1994, Mother, through the Tennessee Department of Human Services,[2] filed a petition against Father to establish paternity of the child. That petition was subsequently nonsuited. Mother testified that she terminated that proceeding because of threats from Father's family.

The current petition was filed on September 18, 2000. Father's federal income tax returns for 1995, 1996, 1997, and 1998 were filed as exhibits at the hearing below. Husband testified that he had submitted a request with the IRS for copies of his tax returns for the pertinent years prior to 1995, but had been unable to obtain them.

Father attempted to show that the child had been in the custody of Mother's grandmother for a period of time prior to 1996. There is no evidence in the record that *custody* of the child was ever granted to the grandmother. The record reflects that Oleana Teffeteller was designated as the child's *guardian* in an order entered in the trial court on May 20, 1987. That guardianship was terminated by an order entered October 31, 1995. Mother testified, without contradiction, that the guardianship was established solely for the purpose of giving her grandmother authority to obtain medical treatment for the child while Mother was working two jobs. Mother stated that the guardian did not receive any support for the child from any source, other than from Mother, and that she and the child lived with the guardian, first in the guardian's home and later in Mother's residence.

## II.

In awarding Mother $1,000 in support for the period from the date of the child's birth to the date of filing of the petition, the trial court stated the following:

> Even if we go back and use imputed income, the Court still is within the Court's discretion on an award of arrearages. The testimony was [that it was] ten years before he knew he had a daughter, it was fifteen years before this lady filed and brought this action today. A previous action had been brought, but dismissed. The arrearages, as far as the Court will award, from the date of birth until the filing of this action will be a total sum of $1,000.00.

The court did not indicate (1) how it arrived at the $1,000 figure; (2) whether that award was computed pursuant to the Child Support Guidelines ("the Guidelines"); (3) if not, how much was due under the Guidelines; and (4) why the court was deviating from the Guidelines-mandated amount. We do not believe the trial court followed the proper steps in determining the appropriate amount of retroactive support in this case.

---

[2]The petition is an exhibit in the record. It reflects that Mother "ha[d] been a recipient of an Aid for Families with Dependent Children Grant from the State of Tennessee [for the child] since October, 1993."

III.

In ***Berryhill v. Rhodes***, 21 S.W.3d 188 (Tenn. 2000), the Supreme Court was faced with a petition for paternity filed after the subject child had attained the age of 18. ***Id***. at 189. In that case, shortly after the child's birth, the putative father and the child's mother reached a private agreement for the support of the child. ***Id***. The father made support payments during the entire period of the child's minority. ***Id***. In her petition, the mother "requested child support from the date of the child's birth through the period of her minority." ***Id***. She took the position that the private agreement between the parties was void as against public policy. The Supreme Court held, in a 3-2 decision, that private agreements to pay child support "used to circumvent the obligations set forth in the statutes and guidelines contravene [public] policy." ***Id***. at 192.

As pertinent to the issue before us, the Supreme Court in ***Berryhill*** opined as to how a court should go about resolving the issue of retroactive child support. We quote extensively from that case because we believe it sets forth the applicable principles and a "roadmap" for courts to follow when presented with this particular issue:

> Our paternity and child support statutes and the Child Support Guidelines evince a policy that children should be supported by their fathers. The paternity statutes provide a process by which the putative father can be identified. Once identified, the father is required to furnish support and education for the child. The paternity statutes incorporate both the child support provisions pertaining to divorce decrees as well as the Child Support Guidelines. The legal duty of support exists in all cases.
>
> \* \* \*
>
> The legislature has provided for retroactive awards by statute and by the incorporation of the Child Support Guidelines promulgated by the Tennessee Department of Human Services, Child Support Services Division. Retroactive child support is available whether the child is a minor or whether the child has reached the age of majority and brings the claim within time permitted by the statute. Furthermore, courts are required to apply the Child Support Guidelines as a rebuttable presumption in determining support, and the 1994 guidelines explicitly provide "that the rebuttable presumption must be applied to all child support awards *even if the order is being sought for a retroactive period before October 13, 1989.*" This Court has held that the guidelines "carry what amounts to a legislative mandate." Accordingly, the mere action of seeking an award of retroactive child support within the time frame permitted by statute

cannot render a request for child support either "unjust" or "inappropriate."

* * *

The Child Support Guidelines, however, were silent as to retroactive awards when this Court decided **Coleman** [**v. Clay**, 805 S.W.2d 752 (Tenn. 1991)]. Subsequent to the decision in **Coleman**, retroactivity provisions were added to the Child Support Guidelines. The specific inclusion of these provisions in 1994 limited the courts' discretion in setting amounts of child support. While the juvenile court continues to have discretion in making awards of child support, that discretion must be exercised within the strictures of the Child Support Guidelines.

* * *

The guidelines provide a general formula for calculating the appropriate amount of child support based on an obligor's income and include a procedure which permits limited deviation downward from the general formula. The guidelines also mandate a deviation upward under certain circumstances. The guidelines "are a minimum base for determining child support obligations."

"[T]he guidelines expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren); where the obligee clearly has a lower level of child care expense than that assumed in the guidelines; and where the obligor is saddled with 'extreme economic hardship.'" "Although the rule does not purport to set forth an exhaustive list of instances in which downward deviation is allowed, these specific instances nevertheless are a powerful indication as to the types of situations in which it is contemplated under the guidelines." The guidelines indicate that the court "shall" increase the award if the obligor is not providing health insurance, if the obligor is exercising less than average visitation, if extraordinary medical and educational expenses exist, or if the court finds that equity requires it.

After determining the amount of child support under the guidelines, the trial court may then consider whether the evidence is sufficient to rebut the presumption. To deviate from the presumptive amount, a court must enter:

> a written or specific finding on the record that the
> application of the guidelines would be unjust or
> inappropriate in a particular case . . . in order to
> provide for the best interest of the child or the equity
> between the parties and the court must show what the
> child support award would have been without the
> deviation.

*Id.* at 190-91, 192, 193 (footnote and citations omitted) (emphasis in original). For further guidance on the issue of a downward deviation, *see **Jones v. Jones***, 930 S.W.2d 541 (Tenn. 1996).

As noted by the Supreme Court, "retroactivity provisions were added to the Child Support Guidelines" in 1994 and these provisions now "limit[] the courts' discretion in setting amounts of child support." ***Berryhill***, 21 S.W.3d at 193. The discretion that remains "must be exercised within the strictures of the Child Support Guidelines."[3] *Id*. It is also clear under ***Berryhill*** that "the mere action of seeking an award of retroactive child support within the time frame permitted by statute *cannot* render a request for child support either 'unjust' or 'inappropriate.'" *Id*. at 192 (emphasis added). *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.01(2)(3), ch. 1240-2-4-.02(7) (1994). Since the petition in the instant case was timely filed, its filing, some 15 years after the birth of the child, cannot be a basis for finding that an award of support under the Guidelines would be unjust or inappropriate.

The retroactivity provisions alluded to in ***Berryhill*** are found at Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(1)(e) (1994):

> In cases where initial support is being set, a judgment must be entered
> to include an amount due for monthly support from the date of the
> child's birth or date of separation or date of abandonment whichever
> is appropriate, until the current support order is entered. This amount
> must be calculated based upon the guidelines using the average
> income of the obligor over the past two years and is presumed to be
> correct unless rebutted by either party. An amount should be
> included in the order to reduce the arrears judgment on a monthly
> basis within a reasonable time.

IV.

In the instant case, the trial court failed to make the findings required by the Guidelines. In the trial court's defense, it should be noted that there was a paucity of evidence regarding Father's pre-1995 income; however, the Guidelines clearly set forth the approach a trial court should take

---

[3]In *State ex rel. Clark*, 2002 WL 31863296, at *7, we noted that the "broad discretion" to determine retroactive awards alluded to in *Coleman* "has been narrowed" by the holding in *Berryhill*.

when addressing retroactive child support. Such support "*must* be calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct *unless* rebutted by either party." *Id*. (emphasis added). It is not clear whether the trial court found that this presumption had been rebutted. If it reached such a conclusion, it failed to state its rationale for that determination.

We have determined that this matter should be remanded to the trial court for a further hearing. The court should receive such additional relevant evidence as the parties may wish to present on the issue of retroactive child support for the period from the child's birth to the filing of the current petition. In resolving this issue, the trial court should follow the step-by-step procedure set forth in the Guidelines as explained in **Berryhill**. Written findings on the various sub-issues to be addressed on remand should accompany the trial court's decision.

V.

So much of the trial court's judgment as awards Mother $1,000 for retroactive child support is vacated. This case is remanded to the trial court for further proceedings, consistent with this opinion. Costs on appeal are taxed to the appellee, Randy L. Garner.

_____
CHARLES D. SUSANO, JR., JUDGE