IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2017 Session

## KIMBERLY K. CARR v. FLOYD K. SUTTON

**Appeal from the Juvenile Court for Sumner County**
No. 2013JV771      Barry R. Brown, Judge
_____

### No. M2015-01568-COA-R3-JV
_____

The State of Tennessee filed a petition in 2013 on behalf of the mother of a child who was born in 1996 to legitimate the child and to require the father to provide health insurance for the child; the requested relief was granted. In 2014, the mother filed a petition to set child support and, following a hearing before a juvenile court magistrate, the father was ordered to pay child support; the magistrate determined that child support should not be made retroactive to the birth of the child but, rather, to the date that the petition to have the child legitimated was filed. Mother appealed the decision to the juvenile judge; after a *de novo* hearing, the juvenile judge adopted the findings of the magistrate and ordered Father to pay support of $549.00 per month from the date the petition to legitimate was filed. Mother appeals the ruling, contending that the obligation to pay support should be retroactive to the date of the child's birth. Concluding that the trial court did not abuse its discretion, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Kimberly K. Carr, Goodlettsville, Tennessee, for the appellant, Pro Se.

Margaret A. Brooke, Hendersonville, Tennessee, for the appellee, Floyd Ken Sutton.

## OPINION

This appeal arises out of a petition to set child support, filed on June 16, 2014, by Kimberly Carr ("Mother"), the mother of a child born in August 1996. No father was listed on the child's birth certificate. The State of Tennessee had filed a petition on Mother's behalf to legitimate the child and to require the father to provide health

insurance in 2013.[1]  After paternity testing confirmed that Floyd Sutton ("Father") was the child's father, an order was entered on March 10, 2014, which declared Father the biological and legal father of the child; changed the child's legal name; established parenting arrangements; ordered Father to obtain health insurance for the child and to pay for the amended birth certificate.  The order noted that "Child Support was not at issue in this cause and is reserved for further actions, if at all."[2]

A hearing was held on Mother's petition to set support before a magistrate on October 3, 2014, at which Mother, Father, the paternal and maternal grandmothers, the child, and two other witnesses, Allen Maggart and Sammy Phelin, testified.  The magistrate entered Findings and Recommendations on October 14, 2014, in which it detailed the testimony it heard, imputed income to Mother and Father and determined Mother and Father's gross monthly incomes, and set Father's child support obligation at $549.00 per month.  The magistrate determined that the amount of support award, retroactive to the birth of the child, would be $132,309.00, without interest; the magistrate considered Tennessee Code Annotated sections 36-2-311, 36-5-101, and Rule 1240-02-04-.06 of the Tennessee Rules and Regulations, and determined that the evidence supported a deviation from the child support guidelines which required that the award be made retroactive to the birth of the child, stating the following:

> Mother has not shown by clear and convincing evidence that the Father had a demonstrated history of violence or domestic violence toward her or the child. . . .  It is impossible for this Court to declare by clear and convincing evidence that domestic violence or a demonstrated history of violence occurred.
>
> ***
>
> Father had no knowledge of his parentage until proceedings began in 2013 and the Mother, for reasons of her own, made a conscious effort to keep the child to herself.  Ultimately, the Mother chose not to take any steps to establish a legal relationship between the child and the father and specifically went out of her way to avoid establishing parentage.  She testified that she had never indicated on any documents, including the child's original birth certificate, that Mr. Sutton was the child's father.  She testified that she essentially maintained silence about Mr. Sutton's parentage because she did not want to "rock the boat" in that she did not want the Father to have contact or visitation with the child and that she did

---

[1] It is not clear from the record before us why the State is no longer involved.

[2] The March 10, 2014 order does not appear in the record on appeal; these facts are taken from the magistrate's report entered on October 14, 2014, and neither party disputed the history of the case as reflected in the various orders.

2

not want her son at the Father's home or involved in the Father's lifestyle. She testified that she did these things because she feared the Father and what he might do to her and the child but she finally needed support enough to "list his name." Because of the Mother's conduct the Father did not have the opportunity to bond with the child or establish a relationship with him. Additionally, the child's own testimony indicates his own unwillingness to have contact or relationship with his father because the Father is perceived as being "the Bad Guy." The Mother has purposefully acted in a manner to prevent the formation of a father-son relationship. It would, therefore, be inequitable for the Court to reward her for such conduct.

The magistrate then held, in pertinent part:

> While it may be certainly inequitable for the Father to pay retroactive child support to make up for the eighteen years which the Mother made no attempt to establish his paternity and thus his obligation of support, the Father has or should have known about his parentage since October 2013. It is then only equitable that the deviation of the Father's retroactive child support obligation is made to begin in October 2013; therefore, the Father has a retroactive child support obligation, without the application of statutory interest, of $7,137.00. . . . Said retroactive child support shall be paid at a rate of One Hundred Dollars ($100.00) per month until the arrears are satisfied.

The order also required the Father to cover the child by a private health insurance policy. The magistrate's recommendation was adopted and made the order of the court on October 27.

Mother appealed the magistrate's order, and the juvenile judge heard the case *de novo* over four days in the months of January, March, April, and June 2015. The same witnesses, with the exception of Mr. Maggart, testified, as well as Sergeant Morrow of the Goodlettsville Police Department, Dr. Linda Leftwich, psychological counselor for Mother, and Adriana Gonzales, who works at Home Safe, a domestic violence services provider. The juvenile court entered an order on July 10, 2015:

> The Court understands the argument of Plaintiff, however, there is simply not sufficient evidence to render a judgment in favor of Plaintiff for support back to birth of the child.
> The ruling of Magistrate Howard is upheld based on evidence presented in this Court and brought out in Magistrate Howard's Finding and Recommendations. The Filing and Recommendation is made a part of this ruling.

3

The court ordered Father to pay for the new Birth Certificate; to maintain insurance on child as ordered by the magistrate; to pay support in the amount of $549.00 a month "beginning at time of filing of October 2013, 3 months in 2013, 12 months in 2014 and 7 months in 2015 for a total to date of $12,078.00 for current support payable thru Central Child Support Receipting Unit," to be paid within 90 days along with August and September 2015 support; and to pay the back child support obligation of $7,137.00 at a rate of $100.00 monthly. By order entered August 28, the court amended the July 10 order to require Father to pay interest in the amount of $1,388.97 on the child support obligation. Mother appealed the judgment to this court, and filed a Motion to Amend or Make Additional Findings of Fact, as well as a Motion for a New Trial in the trial court; both motions were denied due to the fact that the order was being appealed.[3]

Mother represents herself on appeal and her brief is not in compliance with Rule 27 of the Tennessee Rule of Appellate Procedure in many respects. Many of her contentions focus on evidence that she believes the court should not have excluded or should have referred to in its order. However, her brief contains no statement of facts or argument discussing any of the issues she raises or the relief she seeks. We have considered the statements and contentions in her brief mindful of the grace we extend to self-represented litigants and address the issues of retroactivity of the child support award and the admission of certain evidence, which we discern to form the basis of her appeal.

The statement of the evidence in this case was prepared by Mother and approved by the court; it is of little assistance to this court. The statement is a three-page narrative summary of testimony given, according to the preamble, on "October 3, 2014 and other hearings." Under Tennessee Rule of Appellate Procedure 24, the appellate record must contain, *inter alia*, "the transcript or statement of the evidence or proceedings, which shall clearly indicate and identify any exhibits offered in evidence and whether received or rejected," among other things. Tenn. R. App. P. 24(a). The statement of evidence does not comply with this rule. Further, it does not detail any of the testimony of Dr. Linda Leftwich or Adriana Gonzales, evidence of Father's criminal record and income, or other evidence that Mother references in her statement of the issues; moreover, it does not distinguish the testimony heard by the magistrate from that heard by the juvenile judge. The Findings and Recommendations prepared by the magistrate, which were adopted by the court in the July 10 order, contains a summary of the testimony of each witness covering seven pages, as well as a discussion of the documentary evidence of Father's income. The July 10 order also summarizes the testimony of Sgt. Morrow of the Goodlettsville Police Department, as well as of Dr. Leftwich and Ms. Gonzales.

---

[3] The order acknowledged that Mother requested to take testimony of Jerry Horner, a witness whose identity and relevance to the issues presented in this appeal is not explained or apparent from the record, and to introduce the files of Dr. Leftwich, who testified at the hearing; the court also denied these requests "due to the fact the case had already been decided."

4

Accordingly, these documents form the evidentiary basis for our consideration of this appeal.[4]

The core issue stated by Mother in her brief is "whether the Trial Court erred by not awarding retroactive child support to the date of birth [of the child] when the Appellee had been convicted of domestic assault against the Appellant and sentenced to probation with Gary Tessar, Sumner County Probation Officer in April 1995 before the Appellant got pregnant in the winter of 1995."

Title 36, Chapter 2, Part 3 of the Tennessee Code governs parentage and legitimation proceedings for children born out of wedlock; section 36-2-311(a)(11) requires that the order of legitimation include a determination of the amount of child support. Pertinent to this case, that section provides:

> (A) Determination of child support pursuant to chapter 5 of this title. When making retroactive support awards pursuant to the child support guidelines established pursuant to this subsection (a), the court shall consider the following factors as a basis for deviation from the presumption in the child support guidelines that child and medical support for the benefit of the child shall be awarded retroactively to the date of the child's birth:
> > (i) The extent to which the father did not know, and could not have known, of the existence of the child, the birth of the child, his possible parentage of the child or the location of the child;
> > (ii) The extent to which the mother intentionally, and without good cause, failed or refused to notify the father of the existence of the child, the birth of the child, the father's possible parentage of the child or the location of the child; and
> > (iii) The attempts, if any, by the child's mother or caretaker to notify the father of the mother's pregnancy, or the existence of the child, the father's possible parentage or the location of the child;
>
> (B) In cases in which the presumption of the application of the guidelines is rebutted by clear and convincing evidence, the court shall deviate from the child support guidelines to reduce, in whole or in part, any retroactive support. The court must make a written finding that application of the

---

[4] The record on appeal also includes eight exhibits, six of which are in a volume prepared by the clerk; of the remaining exhibits, one is a binder, identified in the index as exhibit 6, containing an assortment of documents and photographs. Exhibit 6 was originally retained in the trial court pursuant to Tenn. R. App. P. 25(b), but was transmitted to this court on Mother's motion.

guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties;

(C) Deviations shall not be granted in circumstances where, based upon clear and convincing evidence:
> (i) The father has a demonstrated history of violence or domestic violence toward the mother, the child's caretaker or the child;
> (ii) The child is the product of rape or incest of the mother by the father of the child;
> (iii) The mother or caretaker of the child, or the child has a reasonable apprehension of harm from the father or those acting on his behalf toward the mother, the child's caretaker or the child; or
> (iv) The father or those acting on his behalf, have abused or neglected the child;

> \*\*\*

(F) In making any deviations from awarding retroactive support, the court shall make written findings of fact and conclusions of law to support the basis for the deviation, and shall include in the order the total amount of retroactive support that would have been paid retroactively to the birth of the child, had a deviation not been made by the court[.]

Tenn. Code Ann. § 36-2-311(a)(11) (2014).

The Tennessee Supreme Court discussed deviations from the presumption that child support orders should be retroactive in the case of *In re T.K.Y*, observing:

The decision to award retroactive child support lies within the discretion of the juvenile court. *State ex rel Coleman v. Clay,* 805 S.W.2d 752, 755 (Tenn.1991). However, the trial court's discretion is cabined by the statutory requirement that it must presumptively apply the Child Support Guidelines. Tenn. Code Ann. § 36–5–101(e)(1)(A) (2005).[5] The trial

---

[5] Tennessee Code Annotated section 36-5-101(e)(1)(A) reads as follows:

In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection (e). If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties. Findings that the application of the guidelines would be unjust

> court's discretion is further limited by Tennessee Code Annotated section 36-2-311(a)(11)(A) (2005), which states a presumption that child support "shall be awarded retroactively to the date of the child's birth." *See also* Child Support Guidelines, Tenn. Comp. R. & Regs. 1240-2-4-.06
>
> Section 36-2-311(a)(11)(A), governing retroactive child-support orders, sets forth only three factors to be considered as a basis for awarding less than full retroactive support: the father's lack of knowledge of the existence of the child; the mother's intentional failure to inform the father of the existence of the child; and the mother's attempts to notify the father of the existence of the child. Tenn. Code Ann. § 36-2-311(a)(11)(A)(i)–(iii).

*In re T.K.Y.*, 205 S.W.3d 343, 355 (Tenn. 2006); *see also Taylor v. Robinson*, M2006-00109-COA-R3-JV, 2007 WL 1628862, at *5 (Tenn. Ct. App., June 5, 2007).

In the Findings and Recommendations, in addition to the matters quoted *supra*, pages 2-3, the magistrate reported:

> The Father denied that he was aware of the Mother's pregnancy and that the first he had learned that he had a potential child was when he was summoned to provide genetic testing. He did indicate, however, that the Mother had called him in June 2013 to say that she needed money, but she never disclosed to him that he was the father of her child; prior to this phone call, the Father said it had been "years and years" since he had spoken with the Mother. He also indicated that, despite the fact that the parties have had mutual friends and that he has generally lived in the same home, none of them had ever said anything to him about the Mother or the child, nor has she ever been to his home to inform him of his parentage. He never saw the Mother during her pregnancy, testifying that the parties' relationship ended in 1995. He was unaware that he had a child and, had he known, he would have wanted a "relationship" with the child but that no one had ever said anything to him that he had a child, much less a child "needing help."

Mother does not cite evidence and, in our review of the record, we discern no proof that preponderates against the finding that Father did not know of his son prior to the paternity test in 2013. Consequently, we procced to consider whether a deviation from the presumption of retroactivity of Father's support order is not warranted because Father had a history of violence toward her. *See* Tenn. Code Ann. § 36-2-311(a)(11)(C)(i).

---

> or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

By its terms, the statute requires that the evidence which would not allow the deviation—here, that Father has a demonstrated history of domestic violence toward her—be clear and convincing, defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

Mother states in her brief that Father "had been convicted of domestic assault against the Appellant"; the record, however, does not contain evidence of a conviction. While Mother does not cite to evidence supporting this statement, in exhibit 6 there is a photocopy of a portion of an "affidavit of complaint" made in April 1995 as part of an application for an arrest warrant, wherein Mother swore that Father came to her home, where they "had some words" and he grabbed her by the arms and shoved her down on the couch, and that when Mother told Father he needed to leave, he did. In the Findings and Recommendations, the magistrate noted that Father "flatly denied any violence or threats of violence towards the Mother" and testified that "Mother demonstrated violence toward him, though he never had her arrested." The magistrate concluded:

> The Court finds that the Mother has not shown by clear and convincing evidence that the Father had a demonstrated history of violence or domestic violence toward her or the child. The use of a clear and convincing evidence standard presents a high standard of reliability which then results in a high probability of the truth of the ultimate fact in controversy. Black's Law Dictionary, 6 Ed. While the accusations flew, there was little in the way of evidence to support them. The Mother provided no testimony (other than her own) and no judgments or proof of any convictions that the Father had engaged in domestic violence against her, much less the child. In fact, all other witnesses, including her own, testified that they were unaware of any domestic violence because they never saw it or even heard about it. Her own Mother testified that she was only aware of injuries and destruction because her daughter told her, not because of specific first-hand knowledge. Couple the witnesses with the Mother's testimony that the alleged domestic abuse occurred between eighteen and twenty years ago and it is impossible for this Court to declare by clear and convincing evidence that domestic violence or a demonstrated history of violence occurred. As such, the Mother's reliance on the provisions of Tenn. Code Ann. 36-2-311(a)(11)(C)(i) is without merit and must be denied.

The court examined the evidence and concluded that there was not clear and convincing evidence of domestic violence so as to preclude the deviation in child support. We have reviewed the record, including the statement of evidence, and have found no

proof that clearly and convincingly establishes a demonstrated history of violence or domestic abuse of Father toward Mother or the child or that Mother or the child has a reasonable apprehension of harm from Father. The holding that deviation from the guidelines was appropriate is supported by the evidence and not contrary to law.

Mother also raises a broad range of issues primarily pertaining to evidentiary rulings and matters she contends the court should have considered. She fails to make citations to the record or to articulate a cogent argument relative to these issues or why they require relief. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). "An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (citing *Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011); *Sneed*, 301 S.W.3d at 615). While we have attempted to give Mother the benefit of the doubt when possible, we cannot create arguments for her where her brief fails to contain an argument on the issues raised in her statement of the issues. Upon our review of the record, it is clear that both the magistrate and the juvenile judge considered the evidence presented and assigned appropriate weight to it; much of the evidence Mother contends should have been considered was not relevant to the issues before the court or constituted inadmissible hearsay.

We discern no basis for concluding that the court abused its discretion in deviating from the presumption that child support would be retroactive to the birth of the child and, accordingly, affirm the court in all respects.

_____

RICHARD H. DINKINS, JUDGE