IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 23, 2009

STATE OF TENNESSEE, EX REL., TAMMY  LAREE KENNAMORE v.
ALBERT THOMPSON ET AL.

Direct Appeal from the Juvenile Court for Hardeman County
No. 05-07-45          Charles Cary, Judge

No. W2009-00034-COA-R3-JV - Filed August 27, 2009

This case involves an award of retroactive child support.  Following her divorce from the man she
claimed was the minor child's biological father, Appellant/Mother filed a petition to establish
paternity against the Appellee herein.  Genetic testing revealed that the Appellee was the father, and
the court awarded child support retroactive to the date of filing of the Appellant/Mother's petition,
which award was a deviation from the Child Support Guidelines.  Finding that the trial court's
deviation from the guidelines is supported by the record, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S.,
and DAVID R. FARMER, J., joined.

Andrew S. Johnston, Somerville, Tennessee, for the Appellant, Tammy Laree Kennamore.

Harriet S. Thompson, Bolivar, Tennessee, for the Appellee, Albert Thompson.

**OPINION**

K.R.K.. was born to Appellant Tammy Laree  Kennamore on July 25, 2000.  At the time of
K.R.K..'s birth, Ms. Kennamore was married to Bobby Ray Kennamore.  The Kennamores were
divorced by Final Decree of the Hardeman County Chancery Court, which was entered on March
21, 2005.  In its Final Decree, the court found that Bobby Ray Kennamore was not the father of
K.R.K. by virtue of DNA testing (conducted in March, 2005), which excluded Mr. Kennamore as
the possible father.

On September 21, 2005, Ms. Kennamore filed a Petition for Paternity in the Juvenile Court
of Hardeman County against the Appellee Albert Thompson.  According to Ms. Kennamore's
testimony, she and Mr. Thompson had been engaged in an affair for approximately ten years.  The

parties subsequently agreed to submit to genetic testing, which tests were conducted in December 2005. The test results indicate that Mr. Thompson was the child's biological father.

In October, 2006, Ms. Kennamore applied to the State of Tennessee for Title IV-D services. A hearing was conducted on May 3, 2007 to determine the amount of child support to be received. The court entered its order on July 19, 2007 and determined that Mr. Thompson was the father of K.R.K., and set child support at $2,100 per month retroactive to March, 2005.

The State of Tennessee filed a motion to alter or amend the judgment on or about August 8, 2007. Specifically, in its July 19, 2007 order, the court limited retroactive child support to the period following the DNA test results that excluded Mr. Kennamore as the possible father of K.R.K. The court opined that Ms. Kennamore was judicially estopped from seeking retroactive support beyond this date because she had alleged in her petition for divorce that the child was born during the marriage. In its motion, the State asked the court to review its denial of retroactive child support, and to set retroactive support from the date of the child's birth in compliance with the Child Support Guidelines. The parties agreed to submit this issue on briefs. On November 20, 2008, the trial court entered an order modifying its previous award of retroactive child support from March 2005, the date of the initial genetic testing, to September 21, 2005, the date that Ms. Kennamore filed her petition to establish paternity against Mr. Thompson.[1]

Ms. Kennamore appeals and raises two issues for review as stated in her brief:

> I. Whether the trial court erred by not ordering Respondent, Albert Thompson, to pay child support retroactive to the date of the subject child's birth where the Court found that the Petitioner was judicially estopped from asserting that the Respondent was the father of the child until such time as she filed her Petition to Establish Paternity based upon an allegation in her Complaint for Divorce that the subject child was born "of" Petitioner's prior marriage but where subsequent DNA testing proved otherwise?
>
> II. Whether the trial court erred by not ordering the Respondent, Albert Thompson, to pay child support retroactive to the date of the subject child's birth in the absence of clear and convincing evidence that the statutory factors enumerated in T.C.A. § 36-2-

---

[1] The trial court's statement in its November 20, 2008 order on the State's motion to alter or amend that it "previously ordered [in the July 19, 2007 order] that Albert Thompson should pay support retroactive to September 21, 2005" is incorrect. Our review of the July 19, 2007 Order on Paternity indicates that, the trial court ordered child support retroactive to March 1, 2005 (the date of the genetic testing indicating that Mr. Kennamore was not the biological father), not September 21, 2005 (the date Ms. Kennamore filed her petition to establish paternity against Mr. Thompson). This confusion seems to be inadvertent on the part of the trial court. For purposes of this appeal, this Court will rely upon the September 21, 2005 date as set forth in the more recent order of the court.

311(a)(11)(A)(I)-(iii) were present thereby justifying a deviation from the Tennessee Child Support Guidelines?

When called upon to enter an order of parentage, Tenn. Code Ann. § 36-2-311(a)(11)(A) requires the trial court to establish prospective child support at the time of the entry of that order. The trial court's decision regarding whether to award retroactive child support is reviewed under an abuse of discretion standard. ***State ex rel Coleman v. Clay***, 805 S.W.2d 752, 755 (Tenn.1991). However, the court's discretion is limited by Tenn. Code Ann. § 36-5-101(e)(1)(A), which requires the trial court to "apply, as a rebuttable presumption, the child support guidelines."

When determining whether retroactive child support should be awarded our legislature has provided us with the factors to be considered. Tenn. Code Ann. § 36-2-311(1)(11)(A) states that:

> (11) (A) .…When making retroactive support awards pursuant to the child support guidelines established pursuant to this subsection (a), the court shall consider the following factors as a basis for deviation from the presumption in the child support guidelines that child and medical support for the benefit of the child shall be awarded retroactively to the date of the child's birth:
>
> (i) The extent to which the father did not know, and could not have known, of the existence of the child, the birth of the child, his possible parentage of the child or the location of the child;
>
> **(**ii) The extent to which the mother intentionally, and without good cause, failed or refused to notify the father of the existence of the child, the birth of the child, the father's possible parentage of the child or the location of the child; and
>
> (iii) The attempts, if any, by the child's mother or caretaker to notify the father of the mother's pregnancy, or the existence of the child, the father's possible parentage or the location of the child.

In addition to these factors, the court may also consider the equity between the parties. Tenn. Code Ann. § 36-5-101(e)(1)(A).

When an award of retroactive support is deemed appropriate by the court, the applicable statutes and regulations include a presumption that the retroactive child support will be awarded from the date of the child's birth in accordance with the child support guidelines. ***See*** Tenn. Code

Ann. § 36-2-311(a)(11)(A); Tenn. Comp. R. & Regs. 1240-2-4-.06(1) (2008).[2] Consequently, if the trial court deviates from the child support guidelines, the statute and regulations mandate that the trial court's decision "shall be supported by written findings in the tribunal's order" explaining the reasons for the deviation and finding specifically that application of the guidelines would be unjust or inappropriate. ***See*** Tenn. Code Ann. §§ 36-2-311(a)(11)(B),[3] 36-5-101(e)(1)(A);[4] Tenn. Comp. R. & Regs. 1240-2-4-.06(2), - .07(1) (2008).[5]

---

[2] This portion of the rules and regulations provides in pertinent part:

> (1) Unless the rebuttal provisions of Tennessee Code Annotated §§ 36-2-311(a)(11) or 36-5-101(e) have been established by clear and convincing evidence provided to the tribunal, then, in cases in which initial support is being set, a judgment must be entered to include an amount of monthly support due up to the date that an order for current support is entered:
>
> (a) From the date of the child's birth:
> 1. In paternity cases...

[3] Tenn. Code Ann. § 36-2-311(a)(11)(B) provides:

> (B) In cases in which the presumption of the application of the guidelines is rebutted by clear and convincing evidence, the court shall deviate from the child support guidelines to reduce, in whole or in part, any retroactive support. The court must make a written finding that application of the guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties.

[4] Tenn. Code Ann. § 36-5-101(e)(1)(A) provides:

> In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection (e). If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

[5] Tenn Comp. R. & Regs. 1240-2-4-.06(2) provides:

> (2) Deviations from the presumption that a judgment for retroactive support shall be awarded back to the date of birth of the child, the date of the separation of the parties, or the date of abandonment of the child shall be supported by written findings in the tribunal's order that include:
>
> > (a) The reasons the tribunal, pursuant to Tennessee Code Annotated §§ 36-2-311(a)(11)(A) or 36-5-101(e)(1)(C), deviated

(continued...)

The trial court ordered retroactive child support from September 21, 2005, the date that Ms. Kennamore filed her petition to establish paternity. In deviating from the statutory and guidelines' presumption that retroactive child support will be awarded from the date of birth, the court stated in the November 20, 2008 Order, as follows:

> Tammy Laree Kennamore, from the time she became pregnant until January 19, 2005, told Bobby Ray Kennamore that he was the father and maintained that Bobby Ray Kennamore was the father of the minor child.
>
> Ms. Kennamore, in her Complaint for Divorce, alleged that Bobby Ray Kennamore was the father of the minor child. Bobby Ray Kennamore supported the minor child during their marriage and was told that he was the father of the child by Tammy Laree Kennamore.
>
> There is no proof that Tammy Laree Kennamore at any time prior to September 21, 2005, alleged that Albert Thompson was the father of the minor child.

---

[5](...continued)

> from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and
> (b) The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
> (c) A written finding by the tribunal that states how, in its determination,
>> 1. Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and
>> 2. The best interests of the child or children who are subject to the support award determination are served by deviation from the presumptive guideline amount.

Tenn Comp. R. & Regs. 1240-2-4-.07(1)(b) provides:

The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order if the deviation complies with the requirements of this paragraph (1) and with this chapter. The amount or method of such deviation is within the discretion of the tribunal provided, however, the tribunal must state in its order the basis for the deviation and the amount the child support order would have been without the deviation. In deviating from the Guidelines, primary consideration must be given to the best interest of the child for whom support under these Guidelines is being determined.

*                              *                              *

>The Court finds that Tammy Laree Kennamore committed fraud in telling her husband, Bobby Ray Kennamore, that he was the father of the minor child and that she is judicially estopped from asserting that Albert Thompson is the father of the child until such time as she filed her petition for child support against Albert Thompson on September 21, 2005.
>
>The Court finds that it was impossible for Albert Thompson to know and that he could not have known of the existence of the child or his possible parentage of the child while Tammy Laree Kennamore was married to Bobby Ray Kennamore. During her marriage she contended that Bobby Ray Kennamore was the father of the minor child.
>
>The Court finds that Tammy Laree Kennamore intentionally and without good caused failed or refused to notify Albert Thompson until September 21, 2005, that he was the father of her minor child.
>
>The Court finds that Tammy Laree Kennamore at no time attempted to or notified Albert Thompson of his possible parentage of the minor child.
>
>The Court finds that there is no contradiction in the proof that the first time Tammy Laree Kennamore alleged that Albert Thompson was the father of her minor child was after her divorce from Bobby Ray Kennamore.
>
>The Court finds that Albert Thompson should pay child support retroactive to September 21, 2005, the date on which Tammy Laree Kennamore filed her petition for paternity.

In her brief, Ms. Kennamore first asserts that the trial court incorrectly applied the doctrine of judicial estoppel. The doctrine of judicial estoppel provides a litigant who has deliberately taken a position in one judicial proceeding will not, as a matter of law, be allowed to advantage his or herself by taking an inconsistent position in another suit. ***See, e.g., Melton v. Anderson,*** 222 S.W.2d 666 (Tenn. Ct. App.1948). In ***Melton***, this Court specifically said:

>A general statement of the doctrine of judicial estoppel is that where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he [or she] will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same.

***Id.*** at 669 (citations omitted).

In *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn.1995), the Supreme Court noted that the policy undergirding judicial estoppel is to prevent a party from gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits. In this record, it is undisputed that, from the date of K.R.K.'s birth, Ms. Kennamore represented to her then husband, Mr. Kennamore, that the child was his. Despite the fact that Ms. Kennamore had engaged in a sexual relationship with Mr. Thompson at the time of the conception, and, by virtue of that relationship, knew (or should have known) that there was a possibility that Mr. Thompson was the father, Ms. Kennamore took the position, under oath, in her complaint for divorce, that K.R.K. was born of the marriage to Mr. Kennamore. Although we concede that Mr. Thompson is not an innocent party, there is no indication in the record that he acknowledged paternity prior to receiving the test results. In her testimony, Ms. Kennamore asserts that, privately, Mr. Thompson acknowledged that he was the father, and that he knew, because of their ongoing affair, that he had fathered the child. However, she concedes that there was never any formal acknowledgment of paternity on his part. Mr. Thompson testified that he was not aware of his possible paternity, and in fact, thought that he was sterile. Because this case was tried by the court sitting without a jury, we review the findings of fact *de novo* upon the record with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies, in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

In *Taylor v. Robinson*, No. M2006-00109-COA-R3-JV, 2007 WL 1628862 (Tenn. Ct. App. June 5, 2007), we determined that requiring payment of retroactive child support back to the child's birth would be unjust and inappropriate. In holding that support was only retroactive to the filing of the petition to establish paternity, we reasoned that, because the mother was sexually active with other men at the time of the conception, and because she failed to clearly notify the father of her pregnancy, it would be inequitable to charge the biological father with retroactive support back to the child's birth. *Id.*

In the case of *In re T.K.Y.*, 205 S.W.3d 343 (Tenn.2006), the Tennessee Supreme Court stated:

> Section 36-2-311(a)(11)(A), governing retroactive child-support orders, sets forth only three factors to be considered as a basis for awarding less than full retroactive support: the father's lack of knowledge of the existence of the child; the mother's intentional failure to inform the father of the existence of the child; and the mother's attempts to notify the father of the existence of the child. Tenn. Code Ann. § 36-2-311(a)(11)(A)(i)-(iii). In other words, the statute only contemplates excusing retroactive child support to the

date of birth in circumstances where the father was not aware of the existence of the child....

*Id.* at 355.

As noted above, the statute further provides that the court may consider "the equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(A). The statutory scheme requires that, when a court finds "evidence that is sufficient" to rebut the presumption that the amount of support should be the amount resulting from application of the guidelines formula, then the court must make a written finding that "the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(A).

In *In re T.K.Y.*, the Court held that the "equity between the parties" language gives trial courts discretion to deviate from the guidelines when setting retroactive support for reasons other than, or in addition to, the situations spelled out in Tenn. Code Ann. § 36-2-311(a)(11)(A), i.e., where the father does not know of the child's existence. Rather, the trial court can make use of the authority granted by Tenn. Code Ann. § 36-5-101(e)(1)(A) to deviate from the guidelines and reduce retroactive child support "in order to provide for ... the equity between the parties." Thus, the statute allows the court to consider the equity between the parties even where the factors described in Tenn. Code Ann. § 36-2-311(a)(11)(A) do not apply. ***See also State ex rel. Irwin v. Mabalot***, M2004-00614-COA-R3-CV, 2005 WL 3416293, at *6 (Tenn. Ct. App. Dec. 13, 2005). In *In re T.K.Y.*, the Supreme Court specifically found that the equity between the parties required it to suspend the child support obligation during the period when the biological father was denied access to the child:

> [the biological father] did not have the benefits or responsibilities flowing from an adjudication of parenthood, or the rights flowing from court-ordered visitation, his ability to form a parental relationship was entirely dependent upon the willingness of [the custodial parents] to permit him to do so. They vigorously denied him that opportunity.

*In re T.K.Y.*, 205 S.W.3d at 356.

Here, in accordance with the statutory mandates, the trial court correctly recited the statutory basis for a deviation from the guidelines, and provided written findings concerning its reasons for the deviation. We have reviewed the record and find that it supports the trial court's conclusion that the guidelines' presumption was rebutted, as well as its conclusion that the equity between the parties allows for a deviation. The record clearly demonstrates that Ms. Kennamore held Mr. Kennamore out as the father of K.R.K. until after their divorce. The record also demonstrates that Mr. Kennamore supported the child until the divorce, and that Mr. Thompson had no basis, other than the fact of his liaison(s) with Ms. Kennamore, from which to conclude that he was the father of her

child.  From the record as a whole, and pursuant to the statutory scheme, we find that the trial court did not abuse its discretion in deviating from the guidelines by awarding child support retroactive to the date of the filing of the petition to establish paternity.

For the foregoing reasons, we affirm the order of the trial court.  Costs of this appeal are assessed against the Appellant, Tammy Laree Kennamore, and her surety.

_____
J. STEVEN STAFFORD, J.